(No. 16219.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SIMON K. SCHRAGER, Plaintiff in Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 4, 1925.*

1. CRIMINAL LAW—*what constitutes embezzlement—intention.* Where one wrongfully and intentionally appropriates to his own use the property of another lawfully in his possession the offense of embezzlement is complete, and the fact that the person may also at the same time intend to subsequently return the property or to make restitution does not relieve him or make his offense any the less embezzlement.

2. SAME—*when a broker is guilty of embezzlement.* Evidence that a broker, who had for several years made purchases and sales of stock for his principal and in whom the latter had absolute confidence and trust, misappropriated the proceeds of the sale of certain stock and used the same for purposes of his own without his principal's consent is sufficient to establish larceny by embezzlement, although the broker, making false statements as to his securities, gave a note which the principal accepted for the amount due.

DEYOUNG, J., took no part.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FREDERIC R. DEYOUNG, Judge, presiding.

DAVID D. STANSBURY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Simon K. Schrager (hereafter called defendant) was indicted by a grand jury of Cook county for embezzlement. The indictment contained three counts. The first and third counts were *nollied* by the prosecuting attorney. The jury returned a verdict finding defendant guilty of larceny by embezzlement in manner and form as charged in the second count, finding the value of the property to be $35,000 and the age of the defendant forty-two years. Motions for a new trial and in arrest of judgment were denied and judgment entered on the verdict sentencing defendant to the penitentiary. He has sued out this writ of error to review the judgment of the criminal court of Cook county.

The second count of the indictment charged Simon K. Schrager, then and there being broker and agent in the employ of Minnie Arnold, fraudulently and feloniously did, without then and there having the consent of Minnie Arnold, embezzle and fraudulently convert to his own use a large amount of personal goods, funds, money and property of Minnie Arnold, which money then and there was delivered to and came to the possession of defendant by virtue of such employment, whereby and by force of the statute the defendant is deemed to have committed the crime of larceny.

The State contends the only question before this court is whether the testimony produced on the trial sufficiently establishes larceny by embezzlement against the defendant. The statute relied upon is as follows: "If any officer, clerk, agent, servant, solicitor or broker of any incorporated company, or if any clerk, agent, servant, solicitor, broker, apprentice or officer of any person, co-partnership, society or association, receiving any money, substitute for money or thing of value whatsoever in his fiduciary capacity, shall embezzle or fraudulently convert or appropriate the same or any part thereof to his own use, or with intent to embezzle, shall take, secrete or otherwise dispose of, or fraud-

ulently withhold, appropriate, lend, invest or otherwise use or apply any money, substitute for money or thing of value received by him in such fiduciary capacity, or the portion thereof, belonging to his principal, employer or fiduciary, without the consent of the company, person, co-partnership, society or association for or on account of which the same was received by him, he shall be deemed guilty of larceny and shall be punished as provided by the criminal statutes of this State for the punishment of larceny, irrespective of whether any such officer, agent, clerk, servant, solicitor, broker or apprentice has or claims to have any commission or interest in such money, substitute for money, or thing of value so received by him." (Smith's Stat. 1923, par. 210, p. 680.)

The proof presented on the part of the State was as follows: Minnie Arnold testified she is a widow living in Chicago. She met defendant about 1918 or 1919 when he was in the investment business, and thereafter he bought certain stocks for her, which he delivered to her from time to time. In the spring of 1922 she had an account with defendant and he held 100 shares of Yellow Manufacturing Company stock. In June, 1922, she had a talk with defendant about the sale of the stock, when he told her about a stock dividend that was to be declared between June 18 and 22, and if the stock was sold before that she would lose that dividend. Defendant advanced her what money she wanted on the stock, which was about $7000. She directed that the stock be sold after the dividend was declared, and defendant was to wire her at New York about the sale. A wire was received by her from defendant advising of the sale, and she wired a reply on June 23, 1922, "I will leave it to your good judgment." Witness returned to Chicago during the latter part of October, 1922, and met defendant at the First National Bank. Defendant told her he had bought 500 shares of Yellow Cab for her, and she told him that was all right. During the latter part of November,

1922, she went to defendant's office and had a talk with him again about the 500 shares of Yellow Cab. He said, "I bought 500 shares of Yellow Cab," and she said, "Well, that sounds pretty good." Defendant did not tell her what he sold the shares of Yellow Manufacturing Company for, but on this visit at his office he gave her a written statement, which was introduced in evidence as People's exhibit 2. This statement was dated November 29, 1922, and showed the sale to Minnie Arnold of 500 shares of Yellow Taxi at 74½, amounting to $37,250. A credit of $9200 is shown from the sale of Yellow Manufacturing Company stock and rights, and a further cash credit of $800, making a total credit of $10,000 and a debit balance on the stock purchase of $27,250. Mrs. Arnold further testified defendant told her on that date that she had a credit of $9200; that he had placed $800 to her account to make up $10,000. She sold some Stewart-Warner stock to defendant to make up the $800 he had placed to her account, and defendant, after paying her the difference for this stock, said to her, "That makes us even, and you have a balance of $10,000." In the latter part of 1923 defendant still held 500 shares of Yellow Taxi stock, and on December 15, 1923, witness had a further conversation with him about an extra stock dividend the Yellow Taxi was to declare. Defendant told her it would be a one hundred per cent stock dividend and thereafter she would own 1000 shares. Later, on January 4, 1924, Mrs. Arnold had another conversation with defendant in his office, and at this time she testified he advised her to "dispose of all this stock, take out what money I wanted and re-invest the other," and she said, "All right." Defendant further stated: "You understand you cannot throw 1000 shares of stock on the market at one time, because I myself hold 1000 shares, and that would be 2000 shares, and it would not be right. We will dispose of 100, 150 or 200 shares at a time." Defendant further stated Yellow Taxi was then worth 64, and that when the stock

was sold the indebtedness of $25,000 would have to be paid first before she would get any money, and Mrs. Arnold stated she knew that was correct. She saw defendant a day or so later and was told the stock was not sold. A few days later, on January 25, 1924, she met defendant at his office, and he told her the stock was sold and he was going to give her a note for $35,000, which she could deposit in the bank. The note for $35,000, dated January 25, 1924, due in seven days, was signed by defendant and given to Mrs. Arnold. This note was offered in evidence as People's exhibit 3. The note was deposited by Mrs. Arnold in the First National Bank. About a week later she saw defendant in his office and talked with him about payment of the note. He said he had called up the bank and told them to hold the note for a few days, and assured her he would meet it at that time. He said, "I had an awful bump on the market." A few days later she saw defendant at the First National Bank and asked him about her money, as she was getting worried. He said he was going to sell some property he owned on Kedzie avenue for $18,000 and would pay her that amount. She testified she said to defendant, "Did you use my money for to speculate with and lose it?" and he answered, "Yes." Mrs. Arnold further testified defendant told her she had 1000 shares of stock which was her property; that he was her broker; that no part of the sale of any shares of stock sold was delivered to her nor were the certificates for such stock or any part delivered to her; that the proceeds of the sale of the stock were to be paid to her and were not to be used for any other purpose or to make any other investments; that when she took the note defendant voluntarily gave her on January 25, 1924, she had perfect confidence in him. She testified she again saw defendant on February 18, 1924, in the office of attorneys Slottow & Leviton, and that a Mr. Wollner was present. At this meeting defendant gave to her attorneys a judgment note payable to her, dated February 18,

1924, in amount of $35,000, due one day from date, and this note was also placed in evidence. She testified she received no cash on either of the notes nor from the sale of her stock.

A letter was introduced in evidence as People's exhibit 1, which was addressed to and received by Mrs. Arnold and written by defendant. It was dated September 21, 1923. It referred to an enclosed circular on Chicago Yellow Cab Company. Defendant said he had talked to a number of brokers in the street, and their prediction was that within sixty days Yellow Cab Company stock should sell for $140 to $150 per share. He stated rumors existed that the stock would be put on a larger dividend basis, and there was a possibility of a stock dividend. He stated he would keep in close touch with the matter, "also advise you when it is the best time for you to sell your stock."

Attorney Charles Leviton testified he knew Mrs. Arnold and defendant, and called upon defendant about February 15, 1924, in her behalf. He asked defendant about his promised payment of indebtedness to Mrs. Arnold, and he replied the temporary depression in the stock market had made him short of funds, but he hoped to raise a loan very shortly and would pay it back within two or three days.

Joseph Slottow, a lawyer of the firm of Slottow & Leviton, testified he had an interview in his office with defendant on February 18, 1924, when Mrs. Arnold and Rudolph Wollner were present. Witness asked defendant about the $35,000 he owed Mrs. Arnold, and he said he expected to pay it. Defendant was shown the $35,000 note of January 25, 1924, and acknowledged it was his signature thereto. He said he owed her that sum and that most of it was the proceeds he had received from the sale of certain of her securities. Defendant at that time gave a judgment note for the same amount, due in one day. This note was introduced in evidence as People's exhibit 4. Defendant made statements about having securities up with a certain

named firm in Chicago; also that he had between $70,000 and $80,000 worth of securities up with the Continental and Commercial Bank for a $40,000 loan; that he owned some real estate, and from these several sources he would have some money.    He said none of Mrs. Arnold's securities were up with the Continental and Commercial Bank, as he had disposed of all of her securities.

Rudolph Wollner testified he is in the real estate business and is a member of the bar; that he had known Mrs. Arnold since 1913, and had advised her to some extent about some of her affairs but not relative to her investments in stocks or bonds; that he was present in the office of Slottow & Leviton, in Chicago, on February 18, 1924, when Slottow, Mrs. Arnold and defendant were there.    Witness testified to practically the same things as related by the witness Slottow.    He further testified that nothing was said at that time about having defendant arrested and such action was not then contemplated; that it was discovered a few days thereafter that defendant's statements about having securities with Babcock & Rushton, and the securities up with the Continental and Commercial Bank, were untrue. At that meeting defendant said he gave Mrs. Arnold the $35,000 note because he owed that sum to her.

The defendant offered no testimony on the trial except two exhibits, one of which was the telegram dated June 23, 1922, sent by Mrs. Arnold to defendant and which has been previously referred to in this opinion; the other was a receipt, dated January 23, 1924, signed by Mrs. Arnold, acknowledging receipt of defendant's note for $35,000, due February 1, 1924, payable at the Continental and Commercial Trust and Savings Bank.    The receipt further recites the note as being received in full settlement of all claims on the purchase of 500 shares of Yellow Taxi stock, purchased on November 29, 1922.

It is the contention of defendant that Mrs. Arnold never claimed the stock as belonging to her; that all she wanted

was the money he owed her, or part of it; that the idea of arresting him came from her attorneys, for the purpose of forcing him to pay her. Counsel further contends the evidence does not show that defendant fraudulently and feloniously converted to his use the property of Mrs. Arnold; that the proof shows she merely had a credit of $10,000 with defendant, which he used to buy stocks for her on margin; that only the relation of debtor and creditor existed between her and defendant, and the account between them was settled by the giving of the note of $35,000 by him to Mrs. Arnold.

The proof shows Mrs. Arnold had more or less dealings with defendant over a period of five years, during which time she had absolute confidence and trust in him, and different purchases and sales of stock were made by him as her broker and agent. He held shares of stock of Yellow Taxi for her at different times. Her testimony disclosed what defendant told her about the Yellow Taxi stock belonging to her and as to how many shares he held for her. The written statement of November 29, 1922, given to her by defendant confirms the sale to her of 500 shares of the same stock, which he continued to hold through the year 1923 and until some time in January, 1924. Defendant's letter to her of September 21, 1923, states that he had a prediction of a price on Yellow Cab Company shares, and that he would advise her as to the best time to sell her stock. It seems to us that from defendant's oral and written statements to Mrs. Arnold, and statements made by him in the presence of Slottow and Wollner that he had disposed of all of Mrs. Arnold's securities, and that the $35,000 note given by him to her was the proceeds he had received from the sale of securities of Mrs. Arnold, make it definite and clear that he held and sold the property and securities belonging to Mrs. Arnold. She testified she authorized their sale upon defendant's suggestion, but did not authorize the withholding of the proceeds of such sale nor the re-invest-

ment of such proceeds. She further said that defendant admitted to her a few days after the first note was given her by him and he failed to pay it, that he had used her money to speculate with and lost it.

The section of the statute previously referred to, upon which the State relies, provides, in substance, that if any agent or broker of any person, receiving any money or thing of value, shall embezzle or fraudulently convert to his own use, or with intent to embezzle shall fraudulently withhold, appropriate, lend, invest or otherwise use any money belonging to his principal, without the latter's consent, shall be deemed guilty of larceny, etc. The defendant sold the shares of stock of Mrs. Arnold, as he stated to her and attorney Slottow, and he told Mrs. Arnold he used her money to speculate with and lost it. Possibly defendant did not contemplate or expect that ultimate loss should occur to Mrs. Arnold, whose securities he sold and appropriated the proceeds thereof to his own use, but the contemplated replacement of the funds cannot be accepted as an excuse for his action. It is quite well established that when one wrongfully and intentionally misappropriates to his own use the property of another lawfully in his possession the offense of embezzlement is complete, and the fact that he may also at the same time intend to subsequently return the property or to make restitution to its rightful owner does not relieve his wrongful act of its criminal nature or excuse him or make his offense any the less embezzlement. (*Spalding* v. *People,* 172 Ill. 40; 52 L. R. A. (N. S.) 1018, and note.) A guilty intent is inferred from all the facts and circumstances shown in the case, and the proof warrants the conviction under the provisions of the statute.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DeYOUNG took no part in this decision.