## STATE v. AURES.

No. 6448.   Decided July 15, 1942.   (127 P. 2d 872.)

See 29 C. J. S., Embezzlement, sec. 10; Acceptance of defendant's note as affecting charge of embezzlement, see note 70 A. L. R. 208; See also, 18 Am. Jur., 607.

*L. E. Cluff* and *Harvey H. Cluff,* both of Salt Lake City, for appellant.

*Brigham E. Roberts* and *H. D. Lowry,* both of Salt Lake City, *Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* and *A. John Brennan,* Deputy Attys. Gen., for respondent.

MOFFAT, Chief Justice.

The defendant, Jacob Aures, was convicted of embezzlement after trial by jury. He appeals.

Section 103-15-5, Revised Statutes of Utah, 1933, defines "embezzlement" as follows:

"Every person intrusted with any property as bailee, tenant or lodger, or with any power of attorney for the sale or transfer thereof who fraudulently converts the same, or the proceeds thereof, to his own use, or secretes it with a fraudulent intent to convert it to his own use, is guilty of embezzlement."

Three points are before the court on this appeal. The first has reference to instructions to the jury.

Objection is raised to instructions No. 4 and No. 5 upon the grounds, when taken together, they are bewildering and that "bailee" was not defined for the benefit of the jury.

Instruction No. 4 reads:

"You are instructed that embezzlement, as defined by the law of this State is the fraudulent appropriation of property by a person to whom it has been entrusted.

"You are further instructed that the Statute of this state provides as follows: 'Every person entrusted with any property as bailee, tenant or lodger, or with any power of attorney for the sale or transfer thereof, who fraudulently converts the same, or the proceeds thereof, to his own use, or secrets it with a fraudulent intent to convert it to his own use, is guilty of embezzlement.'

"You are further instructed, to constitute the crime of embezzlement, as defined, the act of taking is not necessary."

Instruction No. 5 reads:

"You are instructed that before you can find the defendant guilty of embezzlement, as charged in the information, you must be satisfied beyond a reasonable doubt of each of the following elements:

"1. That on the 4th day of March, 1940, at the County of Salt Lake, State of Utah, the defendant was a bailee of Nana Armstrong.

"2. That by virtue of his being such bailee, he came in possession of and was entrusted with and had under his care and control, for the use and benefit of Nana Armstrong, the sum of seven thousand dollars, lawful money of the United States.

"3. That the said defendant, Jacob Aures, as such bailee, and in violation of his said trust, did then and there wilfully, unlawfully, and fraudulently appropriate, convert and embezzle such money, or any part thereof in excess of fifty dollars, to a use not in the execution of his trust, to wit, to his own use, with intent, at the time, to defraud the said Nana Armstrong thereof."

Even if the above set forth instructions be faulty, the court is of the opinion that the objections taken are cured by instruction No. 6, which reads:

"The very gist of the offense with which the defendant is charged lies in a breach of trust or the fiduciary relations; therefore, you must be satisfied from the evidence beyond a reasonable doubt not only that the defendant received money belonging to Nana Armstrong, and failed to pay it back to her upon demand, but also that he received such money in the capacity of trust, without receiving title thereto, and that in failing to return the money to Nana Armstrong, he violated such trust, and had the fraudulent intent of converting said money, or some part thereof, in excess of fifty dollars, to his own use, to defraud the said Nana Armstrong of it. It is insufficient that the mere relation of debtor and creditor existed between the defendant and Nana Armstrong, and if you find from the evidence that the transactions between the parties was merely intended to create that relationship, or if you have a reasonable doubt about the matter, then you should find the defendant not guilty."

Instruction No. 7 was properly given, as such instruction went to testimony given at the trial. There was no error in the refusal to the proposed instruction No. 2, which reads:

"You are instructed that if you find from the evidence that money was given by Mrs. Armstrong to the defendant to invest or deal with as he saw fit or felt proper and that she exercised no control or discretion over it nor had to consult her as to investment but left it to defendant's discretion then you must find the defendant not guilty."

The second point argued is that the verdict is against the law, and the third is that the verdict is contrary to the evidence. If the evidence supports the verdict the law question merges.

The defendant did not testify nor did he present other witnesses. The evidence on behalf of the state is uncontradicted.

Mrs. Armstrong, the complaining witness, first met Aures about May 25, 1937. Whenever they did business only the two were present. Aures, having learned that Mrs. Armstrong had some money, asked her why she put it out at such a low rate of interest. He told her he could put her money out at three per cent; that he would give her two and keep one per cent for his trouble. He told her he was in the small loan business. The evidence showed he had no license to engage in the small loan business as required by law.

Mrs. Armstrong began turning money over to Aures on August 26, 1937. The first amount was $257.50. Then she gave him a check for $1,000 on December 2, 1937. She drew $2,400 out of a deposit account and gave it to Aures on the same arrangement.

Mrs. Armstrong also had four houses. She permitted Aures to collect rents and aside from her needs for living gave to him or he kept the rents to add to the amount he was handling. He told her:

"You can travel around the world on what I am paying you, you don't need to stay here. I will take care of your business, and you can come when you want to."

She said she paid the money to him because she expected him to be an honest upright man.

Aures usually came to her hotel the first of every month to pay her the interest or what she needed to live on. He told her that if she had $20,000 he could put it out just as quickly as she handed it to him.

Two blank receipt books used as a sort of account were put in evidence. When this account began to be kept does not appear other than from the dates. The dates would lead one to think Mrs. Armstrong might have been mistaken as to the year, or else, the account from the beginning is not shown by the books. Her testimony is that the first amount given Aures was $257.50. The first total shows $687.58, with rent collections of $48 making $735.58, with an interest item of $95 carrying forward a total of $830.58. This was dated September 7, 1938. On September 22, there was added a collection of $10 making $840.58. On this balance there were added rent collections enough to make $904.98 to which was added interest in the sum of $98. By November, collections raised the total to $1,037.29. There was then added to the accumulated amount an item of interest in the sum of $100. These items do not harmonize with a division of income on the basis of 2 per cent to Mrs. Armstrong and 1 per cent to Aures for his trouble. It looks like bait.

Some notes were given by Aures to Mrs. Armstrong, but it was suggested they be and they were destroyed. The amount became larger as rents and interest credits were carried forward on the receipt book tabulation until the last amount showed $7,009. No interest was paid but merely shown in an ever increasing balance diminished only by living expenses, until the crack-up came.

A non-interest bearing note, with a three year deferred maturity date, was given for $7,000, covering the amount due Mrs. Armstrong. A receipt for the note was required of Mrs. Armstrong and given of even date with the note. Both were placed in evidence. Why Aures wanted a receipt for the note does not appear. The jury might have concluded that the note or notes were cover-ups, as illustrative of what the wrongdoer does in trying to cover or conceal a wrong and leave signposts that lead to discovery.

The law looks beyond the subterfuge, when note or notes are given as an incident in the carrying out of a scheme to defraud by an attempt to change a confidential trust into a debtor-creditor relationship. *Stecher* v. *State*, 202 Wis. 25, 231 N. W. 168, 70 A. L. R. 203, and note at page 208; *People* v. *Schrager*, 315 Ill. 169, 146 N. E. 151.

It is not the province of this court to judge the sufficiency of the evidence. If there was substantial evidence from which the jury could reasonably conclude that defendant embezzled money of Mrs. Armstrong, we should not disturb the verdict. We are of the opinion there is evidence from which the jury might so find. *State* v. *Tyler*, 150 La. 131, 90 So. 538.

Judgment affirmed.

LARSON and McDONOUGH, JJ., and LESTER A. WADE, District Judge, concur.

WOLFE, J., concurs in the result.

PRATT, J., on leave of absence.