(No. 34498.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARVEN E. RIGGINS, Plaintiff in Error.

*Opinion filed January 24, 1958—Rehearing denied March 19, 1958.*

GUTKNECHT, BLOCK AND SNEWIND, of Chicago, (CHARLES D. SNEWIND, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN B. ANDERSON, State's Attorney, of Rockford, (FRED G. LEACH, WILLIAM H. SOUTH, and ROSARIO A. GAZIANO, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

In 1955, defendant, Marven E. Riggins, was convicted of embezzlement after a jury trial in the circuit court of Winnebago County and was sentenced to the penitentiary for a term of not less than two nor more than seven years. We reversed the judgment for a trial error and remanded the cause for a new trial. (*People* v. *Riggins,* 8 Ill.2d 78.) Thereafter a new indictment charging the same offense was returned to the circuit court, defendant was tried and again found guilty by a jury, and was sentenced to the penitentiary for a term of not less than one nor more than three years. This writ of error is prosecuted to review the second judgment of conviction.

The principal question presented and determined in our previous opinion, where the pertinent facts may be found, was whether defendant, the operator of a collection agency, was the agent of the complaining witness, for whom he collected delinquent accounts, within the purview of Illinois embezzlement laws. This query was answered in the affirmative. Defendant's present counsel have again raised the issue of the statute's application and, in doing so, advance the views already rejected by the majority of this court. Upon a re-examination of the question in face of additional authority and new argument, we find nothing which impels us to depart from or elaborate upon our previous findings. We thus reiterate the conclusion that "defendant was an 'agent' of the complaining witness, receiving money in a 'fiduciary capacity' and, therefore, within the purview of the embezzlement statute." See: 8 Ill.2d at p. 84; Ill. Rev. Stat. 1953, chap. 38, par. 210.

The jury found defendant guilty of larceny by embezzlement and its verdict fixed the value of the stolen property at $254, or the amount involved in what is referred to in the record as the "Billberry account." It is defendant's initial contention that the evidence fails to establish his guilt beyond a reasonable doubt with respect to such account.

Undisputed proof shows that in the latter part of 1953, Billberry's $264.50 account with the jewelry store operated by the complaining witness had become delinquent and was one of several given to defendant for collection. Under terms agreed upon by the parties earlier in the year, defendant was liable for any court costs incurred and was to remit no money until the account was collected in full, at which time the entire amount would be delivered to the complaining witness who would then pay defendant a commission. Defendant contacted Billberry who made a $10 payment directly to the jewelry store but made no further payments. As a result defendant instituted proceedings in the court of a justice of the peace named Cook and, through successive garnishment actions in January, March, April, May, and June, 1954, caused the account to be reduced to $109.14. All payments were made to Cook's office and, on July 2, 1954, Billberry made a cash payment for the balance due. No part of the $254.50 so collected was ever received by the complaining witness. It appears, rather, that defendant used $145.36 to discharge a personal obligation with Cook and received from Cook $109.14 in cash. The exact disposition or use that was made of the latter amount does not appear, but defendant testified it was his custom to deposit money collected for the jewelry store in a checking account he used for business and personal expenses alike. He closed his business on December 1, 1954, and, within several days, filed a petition in bankruptcy in which he listed Cooper Jewelry as a creditor in the sum of $500. The original indictment in the cause followed shortly.

Generally, embezzlement consists of the accused's conversion of another's funds in his possession in a fiduciary capacity, and the crime is complete when there is a fraudulent conversion without the owner's consent. (*People* v. *Schnepp*, 362 Ill. 495; *People* v. *Mooney*, 303 Ill. 469.) Based upon *People* v. *Henderson*, 378 Ill. 436, it is said in 17 I.L.P., Embezzlement, sec. 3: "To establish embezzlement by an officer, clerk, agent, solicitor, broker, or apprentice, as penalized by S.H.A. chap. 38, par. 210, four elements of fact must be proved. It must be shown that the accused was by the terms of his employment charged with the duty to receive money or property of his principal, that he obtained possession thereof, that such possession was in the due course of his employment, and that, although he knew that the money or property did not belong to him, he converted it to his own use or to the use of someone not the real owner." The same treatise on Illinois law reflects the view of this court that criminal intent is an essential element of the crime, although our statute defining the offense fails so to declare it, and points out that guilty intent is necessarily inferred from voluntary acts of the accused depriving his principal or employer of his property. Embezzlement, sec. 4; see also: *People* v. *Stevens*, 358 Ill. 391; *People* v. *Cowgill*, 334 Ill. 635.

Looking to decisions which state that the absence of secrecy and concealment are circumstances tending to negative the charge that one accused of embezzlement was actuated by a felonious intent, (*People* v. *Parker*, 355 Ill. 258; *People* v. *Davis*, 269 Ill. 256; *McElroy* v. *People*, 202 Ill. 473,) defendant rationalizes that the proof of intent fails in this case inasmuch as he at all times admitted his indebtedness for the Billberry account and never attempted to conceal his use of the money collected on it. Foundation for such claim rests upon two conversations defendant said he had with the complaining witness when they met for the purpose of going over all accounts in his hands.

Defendant testified he first told the complaining witness in June, 1954, that the Billberry account had been paid in full, (which is in contradiction of documentary proof showing final payment was not until July 2, 1954,) that he told her he did not have the money, and that she could credit the amount due her against commissions he would earn on other accounts. Describing a second conversation in October, 1954, defendant testified he told her "Billberry had been paid and that I would get her the money," that he told her he was short of money and would bring it to her in a few days, and that she said it would be all right. On direct examination the complaining witness related she learned from defendant in October, 1954, that the Billberry account had been paid in full, and that he then represented "he would give me the money over in the store." When testifying in rebuttal she denied defendant had ever told her he was in financial difficulty, denied that she had ever given him permission to use the money, and related that his only representation with respect to the Billberry account was that he would get the money and bring it in.

If the prosecuting witness is to be believed, the defendant concealed his use of the money and postponed discovery by promises to bring it in; if defendant is to be believed he at all times accounted for the money and was given extended time in which it remit it. No citation of authority is necessary for the proposition that the determination of such an issue rested with the jury which had the best opportunity to judge the credibility of the witnesses and to fix the weight to be afforded their testimony. We find nothing which impels us to disturb the jury's finding and are constrained to remark that the promises and alleged disclosures, which were not forthcoming until defendant was called upon to account for the money he collected, are of little effect in negating felonious intent. If there is a wilful and wrongful taking, use, and appropriation of an employer's money by an agent, the criminality of the act

is not removed by an intention to make restitution. The intention to restore or replace does not make an intentional purloining, secretion or appropriation of the money of another any the less an embezzlement. See: *People* v. *Nevin*, 343 Ill. 597; *People* v. *Binga*, 360 Ill. 18; *People* v. *Barrett*, 405 Ill. 188.

Defendant next asserts that the arrangement between himself and the complaining witness in regard to the handling of monies collected not only negates criminal intent but tends to establish that defendant's use of the money was with the knowledge, acquiescence and implied consent of the complaining witness. Specifically, it is urged that she knew defendant had only one bank account in which he intermingled the proceeds of accounts collected for others with his own funds, and that she "well knew" he used such account to pay his clients, costs of business, and personal expenses. This argument finds no valid support in the record and we may consider too that a good portion of the Billberry account, and perhaps all of it, was never placed in the bank. The complaining witness testified she did not know how many bank accounts defendant had, that she knew of only one, that she did not discuss with him the matter of separating her funds, and that she did not know how he did his banking. We see in this testimony no basis for even an inference that she had knowledge of defendant's banking practices, and to say that she "well knew" defendant would use the funds he collected for business and personal expenses is sheer distortion of the facts in evidence. Moreover, we do not find that the arrangement whereby defendant was to pay over his collections only after an account was paid in full, carried with it acquiescence or implied consent that he could use the money for any purpose pending full collection. While the arrangement was perhaps unwise and invited temptation, its tenor was that defendant had no interest in the funds until such time as the full amount had been turned over to the com-

plaining witness. Such a condition is inconsistent with any thought that consent was given defendant to use the funds, or any part of them, as he chose. We conclude that nothing in the evidence or agreement of the parties negates the guilty intent necessarily inferred from defendant's voluntary acts, the inevitable effect of which was to deprive the complaining witness of her property and its appropriation to defendant's own use.

A reversal of the judgment is also sought by defendant on the ground that prejudicially erroneous instructions were given the jury at the request of the prosecution. Although complaint is now made of instructions 8, 13, 15, 18, 19, 29 and 30, only the giving of 15 and 18 was assigned as error in defendant's written motion for a new trial. In such case he is deemed to have waived the error now assigned on other instructions and our review is limited to instructions 15 and 18. (*People* v. *Flynn*, 8 Ill.2d 116; *People* v. *Bindrin*, 404 Ill. 532, 536; *People* v. *Hatcher*, 334 Ill. 526, 535.) We said in the latter case: "Under the practice in this State, decisions of the court made in the progress of the trial upon instructions, objections to evidence, or other matters of law arising in the cause which have been incorporated in a bill of exceptions, may be assigned for error and reviewed by an appellate court without any motion for a new trial. They are not waived by making a motion for a new trial if such motion is submitted without any points stated in writing, but after a motion is made for a new trial and the grounds thereof are stated in writing the party is limited to the errors alleged in the written motion and all other errors are deemed to have been waived. [Citations.] Under these authorities defendants are limited to the error assigned in giving the fourteenth instruction."

Instruction 15 was in the language of the statute defining embezzlement by an agent, (Ill. Rev. Stat. 1953, chap. 38, par. 210,) while 18 was in the language of the statute ordaining that embezzlement is larceny. (Ill. Rev.

Stat. 1953, chap. 38, par. 207.) Both statutes refer to the secretion of funds and defendant argues that the instructions were erroneous because there was no evidence that he secreted the funds. We rejected the same contention in *People* v. *Duzan,* 272 Ill. 478, saying that the error in giving such instruction, if any, was harmless, and, in *People* v. *Dean,* 321 Ill. 128, where there was likewise no evidence of secretion, held that no prejudice resulted from instructions in the language of the embezzlement statute.

Contention is next made that defendant was denied a fair trial by "deliberate, calculated and successful attempts by the State's Attorney to introduce inflammatory evidence which had no bearing on the case." On two occasions the prosecution sought to elicit from defendant the total amount of indebtedness listed in his bankruptcy petition and in each instance objections were immediately sustained. We see neither deliberate persistence nor an attempt at inflammatory evidence in these occurrences. In view of defendant's · testimony that he collected accounts for 500 clients and that he had listed his indebtedness to Cooper's Jewelry at $500, any person of average intelligence could be expected to know that his petition in bankruptcy embraced more than the obligation to the complaining witness. The only other conduct complained of is that the prosecutor sought to show defendant had taken extended vacations during the period he was in the collection business, intending thereby to convey to the jury that defendant took such vacations on money collected for Cooper Jewelry. An examination of the record, however, lends little substance to such argument. The complaining witness testified only that defendant was not in his office when she called there in April and May, 1953, (and the court sustained an objection to a question as to whether she had ascertained his whereabouts,) and, shortly after, volunteered that he had just returned from "another trip" when she saw him in September, 1954. On the state of the record, therefore, we do

not find that the prosecutor's course of conduct bears any similarity to those which prompted reversal in *People* v. *Jackymiak,* 381 Ill. 528, and *People* v. *Simmons,* 274 Ill. 528, cited to us by defendant.

We are convinced that there is no reasonable doubt as to defendant's guilt and, finding no error in the record requiring reversal, the judgment of the circuit court of Winnebago County is affirmed.     *Judgment affirmed.*