(No. 34850.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VINCENT NEUKOM, Plaintiff in Error.

*Opinion filed March 20, 1959—Rehearing denied May 19, 1959.*

VINCENT NEUKOM, *pro se.*

LATHAM CASTLE, Attorney General, of Springfield, and JOHN B. ANDERSON, State's Attorney, of Rockford, (FRED G. LEACH, WILLIAM H. SOUTH, and ROSARIO A. GAZIANO, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant Vincent Neukom, together with Roscoe Bush and Melvin Raybon, was indicted by the grand jury of Winnebago County on two counts. The first count charged robbery, and the second larceny from the person of Robert Scott. Each defendant pleaded not guilty, and pursuant to motion Neukom and Raybon were granted a severance from Bush. Neukom together with Raybon was tried by jury. They were found guilty of robbery and Neukom was sentenced to the Illinois State Penitentiary for a term of not less than three nor more than ten years.

Neukom obtained a bill of exceptions pursuant to Rule 65—1, and brings this writ of error raising many issues for determination. He contends (a) that he was forced to trial before the same jury venire that sat on the case of Roscoe R. Bush, an admitted accomplice, and he was thus denied a fair and impartial trial, (b) that the court erred in certain prejudicial remarks before the jury, (c) that his identity as one of Scott's attackers was not proved beyond a reasonable doubt, (d) that he was deprived of a fair trial by the prejudicial and hostile attitude of the court, (e) that the evidence fails to sustain his conviction, as the accom-

plice's uncorroborated testimony was insufficient to convict, (f) that the evidence offered by the People was conflicting and fails to sustain his conviction, (g) that he was improperly examined on cross-examination by the State's Attorney as to a previous conviction, (h) that the alleged victim was admittedly drunk and his testimony was therefore not credible, (i) that the confession of the admitted accomplice was improperly used against defendant, and (j) that the court erred in giving the instructions requested by the People, and in refusing certain instructions offered by the defendant.

In the trial of the cause, Robert Scott, the complaining witness, testified that on March 13, 1956, he left home about 4:00 P.M., and spent the late afternoon and early evening in two or three taverns. At about 9:00 P.M. he was refused a drink in Jim and Ray's Tavern. Upon leaving that tavern he met two men, whom he indicated were Neukom and Raybon, who took him to a car driven by Bush. The four of them went to another tavern where Bush bought some beer which they drank in the car. They then drove out of town with Scott, Neukom and Raybon in the back seat. They stopped on the shoulder of the road where Bush got out and walked away. Scott and the others then got out, whereupon Neukom and Raybon wrestled and fought with him and took his billfold. He claimed they beat him in the face to make him let go of his billfold, knocking him unconscious. When he revived they were gone, and he began walking toward a farmhouse, when two deputy sheriffs came along and picked him up. He could not remember what kind of a car his assailants were in, how they were dressed, what they talked about, whether he had seen them earlier in the day, or who had sat on either side of him in the car. To the best of his knowledge he had eight or ten dollars in his billfold.

Marvin Myers, a deputy sheriff of Winnebago County, answered a call while on patrol in the county on March 13,

1956, and found Robert Scott walking along the shoulder of the road. He was bleeding around the mouth so they took him to the hospital. The other deputy LeRoy Stevenson, testified to practically the same facts.

Roscoe Bush, an accomplice, appeared as a witness for the People. During his direct examination he became evasive and could not remember details of the occurrence, so upon the People's motion and over defendant's objection he was made a court's witness. He said that he and the defendants were together most of the day, hauled some junk, and had drinks at various places in Rockford. They first saw Scott at the Rockford Tap and later saw him being thrown out of Jim and Ray's. Later they saw him at the Jimstown Tap. He denied that he, Raybon and Neukom argued about a girl at Jimstown Tap, but said such an argument did occur there two days earlier. When they left the Jimstown Tap, Scott followed them and entered their car. Scott was drunk but the others were not. He said they drove out of town and stopped, where they all got out and he walked a few feet away. He said he saw nothing, but that the others had a fight. They left Scott there and drove to Neukom's trailer where they split the money and gave Bush a dollar. He spent the night at Neukom's trailer. He admitted he had been tried as an accessory to the fact, had been found guilty, and was hoping for probation.

Vincent Neukom testified in his defense that on March 13 he borrowed a truck and helped Bush haul some junk from his home. Raybon helped also. The three spent the greater part of the day together and drank beer in several Rockford taverns that evening. He saw Scott in the Ace Tavern, and he was then drunk and boisterous. Scott left before they did, and about 9:30 or 10:00 P.M. they saw him at Jim and Ray's Tavern, where the bartender threw him out. They then went to the Jimstown Tap where Bush asked to use Neukom's car to go to another tavern. He

said Bush and Scott left together, and he and Raybon stayed there with two girls. Later these defendants and the girls went to the TV Tap, and about an hour later Bush returned there alone. The three then spent the night at Neukom's trailer. He denied that he was in any car with Scott at any time on March 13. On further cross-examination he admitted that he was convicted at Nevada, Iowa, for the crime of breaking and entering, and sentenced to ten years in the penitentiary at Animosa, Iowa. The transcript of the record of his conviction was placed in evidence.

Kenneth Buss, who worked as janitor and stockman at Jimstown Tap, said he saw Neukom, Raybon and Bush in that tavern on March 13, 1956, at about 10:00 or 10:30 P.M. He said Bush left with another man, and Neukom and Raybon stayed and danced with two girls. They left with the girls 30 or 40 minutes after Bush departed.

Defendant first complains that he did not receive a fair and impartial trial because he was forced to trial, over his protest, before the same panel of jurors who tried his confessed accomplice, Roscoe Bush; because many of the jurors were called from the courtroom audience and were not competent and proper jurors, and his challenges to them for cause were denied; and because of the prejudicial and hostile remarks and actions of the court. He claimed that the judge stated in his chambers that he knew defendant and his codefendant were guilty and he would see that "They got time."

These allegations of error are serious, but no one of them finds any basis and support in the record of this cause. An examination of the record fails to disclose any protest to the trial of defendant before this jury panel. The same unfounded charge is made in the motions for new trial and in arrest of judgment, but is nowhere else evident. The record likewise fails to disclose any evidence of the incompetence of the jurors as alleged, or any challenges to any individual juror for cause. Likewise we fail to find

any prejudicial remarks of the court. We cannot pass upon matters not appearing in the record before us. *People* v. *DePompeis,* 410 Ill. 587.

Defendant does claim that the court assisted in making the identification of himself and Raybon, and conjectured that defendants struck Scott with their fists—thereby prejudicing the jury. Examination of the record only shows that the court put into words the indications of a witness in pointing out the defendants, and made answer to counsel's objection in regard to one of Scott's answers on examination, that the answer technically fitted the question as put to the witness. We find nothing prejudicial in these remarks.

Defendant next asserts that Scott's identification of himself and Raybon was vague and uncertain; that they were not properly or positively identified; and that the testimony of an admitted accomplice could not be received to identify or convict. Scott's testimony is confused and alone would cast doubt on the identification. However, Bush definitely and adequately identified Neukom and Raybon as Scott's assailants. The uncorroborated identification of a defendant, by a credible witness, is sufficient to convict although contradicted by the accused. (*People* v. *Burts,* 13 Ill.2d 36.) Here the accomplice is corroborated by Scott.

The testimony of an accomplice is to be received with suspicion and acted upon with caution. Such considerations go to the weight of the evidence and the credibility of the witness. However, a conviction may be based upon such testimony, even if uncorroborated, if it is of such a character as to convince the jury beyond a reasonable doubt of the guilt of the accused. If the jury is so satisfied by the testimony of an accomplice, the judgment should not be set aside unless it is plainly apparent to the reviewing court that the defendant was not proved guilty beyond a reasonable doubt. (*People* v. *Niemoth,* 409 Ill. 111; *People* v. *Nitti,* 8 Ill.2d 136.) Bush was corroborated in many

material aspects by both Scott and Neukom. His testimony was properly received in evidence, and with all of the other evidence presented leaves little room to doubt defendant's guilt or identification.

Neukom asserts that the testimony of Bush is inherently contradictory. Some minor variances appear between his direct and cross-examinations, but no material contradictions are apparent. It is rare, indeed, when all details of any related experience will fit as a perfect whole without minor inconsistencies.

Defendant insists that the evidence was insufficient to sustain the guilty verdict as the People's evidence was conflicting, the whole evidence fails to sustain the conviction, and Scott was drunk at the time of the alleged occurrence and his testimony was therefore not credible. The People's witnesses told substantially the same stories, corroborating each other in great measure. Neukom's testimony, while corroborating the events of the earlier part of the evening, is contrary and conflicting with the People's occurrence witnesses as to the commission of the crime charged. The jury decides the guilt of the accused by evaluating the credibility of the individual witnesses. Its determination will be disturbed by this court only if it is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People* v. *Stevens,* 11 Ill.2d 21.) A conflict in the evidence does not itself establish a reasonable doubt, and a jury verdict based on credible and substantial evidence is not rendered reversible by the fact that there was other evidence in the case which might, if believed, have resulted in a different verdict. (*People* v. *Kelly,* 8 Ill.2d 604.) The jury, obviously, found the People's witnesses to be more credible. We cannot say, on the basis of this record, that their verdict is unreasonable, improbable or unsatisfactory, or that it raises any reasonable doubt of defendant's guilt. The evidence was sufficient to convict and we will not reverse the verdict upon that basis.

Neukom urges that the court erred in permitting the State's Attorney to cross-examine him in regard to his conviction of a prior offense and in admitting the transcript of such conviction into evidence. Section 6 of division XIII of the Criminal Code (Ill. Rev. Stat. 1957, chap. 38, par. 734,) authorizes the showing of a prior conviction to affect the credibility of a witness. This may be established by the production of the record of conviction or an authenticated copy of the record. (*People* v. *Crump,* 12 Ill.2d 402.) That is the procedure followed in this situation, after defendant offered himself as a witness. *People* v. *Baker,* 8 Ill.2d 522, indicated that cross-examination *only* of a defendant as a witness, to establish a prior conviction, would be erroneous. However, the authenticated copy of the record was admitted in this case, thereby curing any such objection.

He further urges the confession of the admitted accomplice, Bush, was improperly used against him. He relies upon the assertion that the admissions or confession of one charged as a codefendant, and made out of the presence of the defendant, are not admissible in evidence against the defendant. The State's Attorney did, after having Bush made a court's witness, ask him certain questions on cross-examination, referring to a statement Bush had made. The questions and answers thereto were admitted by Bush. The witness was made a court's witness only after he had given answers on direct examination contrary to such statement. The alleged confession of Bush was never introduced into evidence. There was no objection by the defendant, other than objections that calling Bush as a court's witness allowed the People to impeach their own witness and to the form of the first question to the court's witness. Where a witness testifies inconsistently with statements previously made, or previously testified to when called by the People, even if the witness is an accomplice, the People may have the witness called as a court's wit-

ness, and may cross-examine the witness in regard to previous inconsistent written statements for purposes of impeaching the witness as to such inconsistencies. *People v. Van Dyke,* 414 Ill. 251; *People v. Bote,* 379 Ill. 245; *People v. Quevreaux,* 407 Ill. 176.

Finally defendant contends that the court erred in giving each and every instruction offered in behalf of the State, and in refusing instructions numbered 32, 34, 11, 16, 17, 23, 24, 18, 15, 19, 20, 25, 28, and 30 offered in behalf of the defendants. The court has examined the instructions given and refused, and finds that taking all of the instructions as a series the jury was properly instructed. The jury was properly instructed on the theories and rules of law set forth in the instructions offered by defendant and refused by the court. To have included all of the refused instructions would have been unnecessarily lengthy, repetitious and confusing. We were not, in every instance, able to identify the instructions to which defendant had reference as "refused," and he submitted specific objections only as to a very few instructions marked "refused" and specified in his motion for new trial. Defendant is deemed to have waived error as to any instructions not assigned as error in the motion for new trial. (*People v. Riggins,* 13 Ill.2d 134.) The remaining objections to instructions given and refused are general only, and lacking specification of objections leaves nothing for our review. We find that the jury was properly instructed.

Having found no merit to the errors assigned by the defendant Neukom, we, therefore, must necessarily conclude that the judgment of the circuit court of Winnebago County was correct. That judgment is consequently hereby affirmed.

*Judgment affirmed.*