THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER BRADFORD, Defendant-Appellant.

First District (5th Division)   No. 1—87—1358

Opinion filed February 23, 1990.

Randolph N. Stone, Public Defender, of Chicago (Thomas N. Swital, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Gael O'Brien, Special Assistant State's Attorney, and Inge Fryklund and Patrick J. Finley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, Walter Bradford was convicted of attempt (murder) (Ill. Rev. Stat. 1985, ch. 38, par. 8—4) in the stabbing of Bethell James. Bradford was sentenced to six years' imprisonment and three years' mandatory supervised release.

We affirm.

The incident at issue occurred on Sunday, October 6, 1985.

Bethell James, the complainant, testified that at approximately 1:30 p.m. on that day, he was watching a "dice game" in the 1300 block of Wentworth Avenue in Chicago, while sharing a pint bottle of wine with someone, when a fight began between defendant and Larry Stewart. James stated he broke up the fight by pulling the defendant off of Stewart. Both defendant and James temporarily left the scene. James testified he returned approximately 20 minutes later, at which time he saw defendant coming toward him from a parking lot across the street. James stated defendant told him, "Don't ever stop me from fighting," and chased after James. In response to the State's question regarding what the defendant did after catching up to him, James stated, "Well, I was strucken [sic]. I didn't see what I was strucken [sic] with, but I was struck in the arm and in my stomach." James indicated for the court how he had attempted to defend himself. James stated he did not see what defendant had in his hand at the time and did not know that he had been stabbed. James stated a man named Tim Walker witnessed the incident and drove James to St. James Hospital for treatment.

James admitted that, on the day of the incident, he was carrying a can of mace in a left inner pocket of his coat. James testified, however, that he had made no attempt to reach for it when the defendant had approached him and did not have anything in his hands when he was stabbed. James also admitted that he had begun drinking alcohol at 11 a.m. or 11:30 a.m. on that day. James denied that, when at the hospital, he was too intoxicated to sign a hospital consent form.

Dr. Amball K. Patel testified on defendant's behalf pursuant to a stipulation that Patel was qualified to testify as an expert and that Patel was James' attending physician in the emergency room at St. James Hospital. Patel testified that, prior to surgery, he examined James for approximately 15 to 20 minutes. Patel stated James was intoxicated and, because Patel did not believe James was able to make

a judgment as to consent, James' father signed the hospital consent form. Patel stated medical records indicated James' blood-alcohol level was .481.

On cross-examination, Patel stated that, normally, a person with a blood-alcohol level of .300 would be comatose and unable to respond verbally. Further, a person with a blood-alcohol level of .481 would be near death. Patel admitted James was able to sit up and talk to Patel and that Patel had no trouble understanding James. However, Patel testified, James only answered some of his questions and was uncooperative. He stated James was in pain and thrashed about.

As to James' wounds, Patel stated that, internally, the abdominal stab wound was three to four inches in length although, externally, it appeared smaller. Patel indicated the wound to James' forearm was complicated by a severed nerve.

Baron Bradford, a cousin of the defendant, testified he was with the defendant on the day of the incident. Baron stated that shortly after defendant and Stewart started fighting, James "[came] out of nowhere" and tackled the defendant. Baron stated James and defendant then began to struggle and Baron separated them. Baron stated he and the defendant thereafter sat in a car for about 25 minutes near where the fight occurred. When James returned to the scene, Baron and defendant were standing out of the car. Baron stated defendant walked over to where James was and the two became involved in a second scuffle. Baron testified that, when he attempted to intervene, he saw that James had reached inside his coat and "the next thing [he] knew, [James] was cut." Baron testified that before James put his hand in his pocket, defendant did not brandish a weapon.

On cross-examination, Baron admitted that he did not tell the police what he saw after learning that his cousin had been arrested. Baron also stated that, while he and the defendant were sitting in the car after defendant's fight with Stewart, defendant indicated he was angered at James for breaking up that fight and also because, in breaking up the fight, James had hurt defendant's hip. Lastly, although Baron testified James had been drinking, he stated he "had no idea" whether James was intoxicated or not.

In his own testimony, defendant gave the same account as Baron Bradford regarding defendant's initial fight with Stewart, James' intervention, James' return to the scene, the ensuing struggle with James, and James' reach inside his coat with his hand when Baron attempted to intervene. Defendant stated James reached into his coat with his right hand. At that point, defendant stated, he panicked and

"rushed" James with a knife-like "scraper" because, he stated, he knew James "to carry *** weapons and what not" and that James might have had one on his person at the time. Defendant explained he kept the instrument "on his belt buckle" for use in his employment as a janitor at a nightclub to scrape gum off of the floor. Defendant stated he displayed the "scraper" after James put his hand in his coat. After the stabbing, defendant stated, he heard something metallic hit the ground. Defendant stated James "took off running" but then turned around and ran back at defendant. A second struggle between them ensued. Baron eventually intervened successfully.

On cross-examination, defendant admitted being angered at James for injuring defendant's hip. Defendant also admitted that he had approached James and initiated the altercation with James when James had returned to the scene after intervening in the fight between defendant and Stewart. Defendant further admitted that he never actually saw James grab anything inside his coat. When defendant came at James, defendant stated, James raised up his left hand in defense. Defendant stated he took hold of James' right hand which, defendant stated, was "caught up in his jacket." Defendant testified that when James got his hand out of his pocket, he heard whatever it was that James had in his hand hit the ground; however, he did not look at the ground to see what the item was. Defendant testified that he could not remember whether he stabbed James in the abdomen before or after he heard the item hit the ground.

OPINION

On appeal, defendant first argues that the testimony of Bethell James was so unsatisfactory as to raise a reasonable doubt of defendant's guilt. Specifically, defendant directs our attention to Patel's testimony concerning James' state of intoxication, contending that that evidence undermines the reliability of James' testimony. Defendant also asserts Patel's testimony that James' father signed the hospital consent form established that James' testimony regarding the consent form was untruthful.

■ Defendant's contention relates to James' credibility, the assessment of which is properly made only by the trier of fact, who has had the opportunity to view, first hand, that testimony at trial. (*People v. Henson* (1963), 29 Ill. 2d 210, 193 N.E.2d 777.) The trial judge's assessment in that respect is no more assailable where the witness is one who was allegedly drunk. (*People v. Vandiver* (1984), 127 Ill. App. 3d 63, 67, 468 N.E.2d 454, 457.) Moreover, after carefully reviewing all of the evidence in the light most favorable to the prosecution (see

*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461), we do not believe the trial judge's evaluation of James' credibility was so unreasonable or improbable as to raise a reasonable doubt of defendant's guilt (see *People v. Neukom* (1959), 16 Ill. 2d 340, 158 N.E.2d 53, *rev'd on other grounds, People v. Davis* (1976), 65 Ill. 2d 157, 357 N.E.2d 792). In contrast to Patel's testimony, neither defendant's own testimony, nor Baron Bradford's, indicates defendant was so intoxicated as to be incapable of perceiving the events which took place on the day of the incident or of remembering them. In fact, their testimony substantially corroborates James' testimony as to the sequence of events.

■ Defendant also contends the evidence supports, at most, only a conviction for aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4) because defendant purportedly stabbed James in self-defense. Defendant bases that contention on the extension of his argument above that the only credible account of the circumstances of the stabbing was given by the defendant and Baron Bradford.

We do not agree. The trial judge noted that the only significant conflict in the evidence was whether James reached into his coat pocket during the fight with the defendant such as to support defendant's theory of defense. In resolving that conflict, the trial judge determined James to be credible and defendant's use of force unjustified.

The specific intent required for the offense of attempted murder may be shown by the character of the assault, whether a dangerous weapon was used and other surrounding circumstances. (*People v. Treadway* (1985), 138 Ill. App. 3d 899, 486 N.E.2d 929.) By defendant's own account, the defendant initiated the altercation with James after expressing anger over James' intervention in a fight and for causing injury to defendant's hip. Defendant pursued James and used a knife-life instrument to stab James twice. Defendant's acts were sufficient to cause a four-inch internal abdominal wound and to sever a nerve in James' arm. Based on those facts, we cannot conclude that the trial judge's inference of defendant's intent lacks support in the record.

We therefore affirm the judgment of the circuit court.

Affirmed.

COCCIA, P.J., and GORDON, J., concur.