(No. 33696.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARVEN E. RIGGINS, Plaintiff in Error.

*Opinion filed January 19, 1956—Rehearing denied March 21, 1956.*

SCHAEFER, MAXWELL, and KLINGBIEL, JJ, dissenting.

BERRY & SIMMONS, of Rockford, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and ROBERT R. CANFIELD, State's Attorney, of Rockford, (FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Marven E. Riggins, was indicted in the circuit court of Winnebago County for embezzlement. (Ill. Rev. Stat. 1953, chap. 38, par. 210.) After a verdict of guilty by a jury, the court sentenced him to a term in the penitentiary of not less than two nor more than seven years.

The defendant argues for reversal on the ground that as operator of a collection agency he was an independent businessman, who at no time acted as "agent" for the complaining witness, Dorothy Tarrant, within the meaning of this embezzlement statute. However, he insists that even if he is wrong in this contention, he is still entitled to a new trial.

We consider initially the defendant's argument that he was not a member of a class designated by the statute. Only that evidence relevant to this question is stated.

At the time of the indictment (January, 1955), the defendant was the owner and operator of a collection agency in Rockford, called the Creditors Collection Service, and had been so engaged for about five years. He main-

tained an office, had both full and part-time employees, and during 1953 and 1954 had a clientele of some 500 persons and firms for whom he collected delinquent accounts.

In February, 1953, he called on the complaining witness, Dorothy Tarrant, who operated a firm known as Cooper's Music and Jewelry. He said he was in the collection business and asked to collect the firm's delinquent accounts. As a result, they reached an oral agreement whereby the defendant was to undertake the collections.

By this agreement, the defendant was to receive one third on city accounts and one half on out-of-city accounts. It was further agreed that he need not account for the amounts collected until a bill was paid in full, at which time he was to remit by check.

There is a conflict in the evidence as to whether the defendant was to give a check for the whole amount collected and then receive his commission, or whether he was authorized to deduct his commission and account only for the net amount due.

It was further agreed that the defendant would be liable for court costs in the event he chose to file suit on any of the accounts, but the first money collected was to be applied to those costs. If no collection was made, however, the defendant was to stand the loss.

The parties operated under this agreement for almost two years. During that time the complaining witness exercised no control over the defendant as to the time or manner of collecting the accounts, and with her knowledge he commingled funds collected for all his clients in a single bank account. He also used this as a personal account, from which he drew for business, family and personal expenses.

In October, 1954, the complaining witness became aware that the defendant had collected several accounts for her in full, but had not accounted to her. She discussed the matter with him, and he assured her that he would bring

his records up to date and pay what was due. After the defendant defaulted on this promise, she made further investigations and discovered new breaches of the agreement. She had further discussions with him and received additional promises to pay up, none of which were kept. Negotiations were terminated December 14, 1954, when the defendant filed a bankruptcy petition listing Cooper's Jewelry and Music, among others, as a creditor. Thereafter, the complaining witness preferred the charges against the defendant which resulted in his indictment and conviction for embezzlement.

To decide whether the defendant, a collection agent, can be guilty of embezzlement in Illinois, it is helpful to consider our embezzlement statutes in the historical context of this crime.

Embezzlement, unknown at common law, is established · by statute, and its scope, therefore, is limited to those persons designated therein. (*People* v. *Preble,* 316 Ill. 233; 29 C.J.S., Embezzlement, sec. 13.) The general objective of embezzlement statutes is to meet and obviate certain defects in the law of larceny through which many persons who misappropriated another's property escaped criminal prosecution. (18 Am. Jur., Embezzlement, sec. 2.) Thus, the Illinois statutes which make embezzlement a felony state that the violator "shall be deemed guilty of larceny."

Viewed in their entirety, our laws relating to embezzlement are broad and comprehensive. The following persons are included in those statutes making the crime of embezzlement a felony: "Whoever embezzles or fraudulently converts to his own use" (Ill. Rev. Stat. 1953, chap. 38, par. 207); "a clerk, agent, servant or apprentice of any person" (par. 208); "any banker or broker, or his agent or servant, or any officer, agent or servant of any banking company, or incorporated bank" (par. 209); "any clerk, agent, servant, solicitor, broker, apprentice or officer * * * receiving any money * * * in his fiduciary capacity" (par. 210);

public officers (par. 214); administrators, guardians, conservators and other fiduciaries (par. 216); and certain members and officers of fraternal societies (par. 218).

In addition, certain sections of the Criminal Code make the crime of embezzlement a misdemeanor and cover the following: "any warehouseman, storage, forwarding or commission merchant, or other person selling on commission, or his agent, clerk or servant" (par. 212); "any attorney at law, justice of the peace, constable, clerk of a court, or other person authorized by law to collect money." (par. 213).

In this instance, we are particularly interested in the general embezzlement statute (par. 208,) and the special statute under which defendant was indicted (par. 210). The former, applying to "any clerk, agent, servant or apprentice of any person," was originally enacted in 1827, and has existed in its present form since 1874. The latter, however, refers to "any clerk, agent, servant, solicitor, broker, apprentice or officer * * * receiving any money, * * * in his fiduciary capacity" and was not passed until 1919. For present purposes, this latter enactment is very significant, for it also provides as follows: such person "shall be punished as provided by the criminal statutes of this state for the punishment of larceny, *irrespective of whether any such* officer, *agent,* clerk, servant, solicitor, broker or apprentice *has or claims to have any commission or interest in such money,* substitute for money, or thing of value so received by him." (Italics added.)

In *Commonwealth* v. *Libbey,* 11 Metcalf (Mass.) 64, decided in 1846, it was held that a collecting agent, who followed that as an independent business and who had the right to commingle funds, could not be convicted as an "agent" under a general embezzlement statute. This was predicated on the idea that he had a joint interest in the property said to be embezzled. This doctrine was later applied in other jurisdictions, (see, for example, *State* v.

*Kent,* 22 Minn. 41, and *State* v. *McClane,* 43 Tex. 404,) and was recognized as valid elsewhere. *Clark* v. *Commonwealth,* 97 Ky. 76, 29 S.W. 973, 16 Ky. L. R. 703; *State* v. *Lanyon,* 83 Conn. 449, 76 Atl. 1095. Cf. *State* v. *Sarlls,* 135 Ind. 195, 34 N.E. 1129.

Similarly, a 1903 decision of this court reversed the conviction of an agent who was employed to solicit subscriptions on commission and who was authorized to deduct her commissions from the amounts collected, for the reason that she was joint owner with the principal in the amounts collected. (*McElroy* v. *People,* 202 Ill. 473.) In so deciding, the court cited 'with approval the *Libbey case.* In *People* v. *O'Farrell,* 247 Ill. 44, however, the court distinguished the *McElroy case* and affirmed an embezzlement conviction where under the terms of the contract creating the agency the agent was not authorized to deduct his fees from the amount collected, but accounted in full to his principal.

Briefly, then, this was the status of the law in 1919 when the special statute (par. 210) was passed, which declared that there was embezzlement "irrespective of whether" the accused "has or claims to have any commission or interest in such money." This statute expressly abrogated the doctrine enunciated in the foregoing cases and relied upon by the defendant here. Moreover, it is clear that, in accordance with said statute, the defendant was an "agent" who received money in a "fiduciary capacity."

First, the cases relied upon by the defendant to take a collection agent out of the "agent" category are based upon the notion that there can be no embezzlement where one has a joint interest in the property, not that an agent for collection is any less an agent. And, as aforesaid, the problem posed by those cases has been obviated by statute in Illinois.

Second, it can hardly be disputed but that the defendant

acted as agent for the complaining witness in collecting her accounts. He undertook the collections on her behalf by virtue of authority which she delegated to him. He had no right to collect from anyone except as authorized by her and was required to render a full account of all matters entrusted to him, the same as any agent. Likewise, it is apparent that in so acting he assumed other duties ordinarily attendant upon that relationship, such as the duty to exercise good faith, make full disclosure, etc. The prevailing view of the courts in construing embezzlement statutes is succinctly expressed in 18 Am. Jur., Embezzlement, sec. 30, as follows: "The term 'agent' as used in embezzlement statutes is construed in its popular sense as meaning a person who undertakes to transact some business or to manage some affair for another by the latter's authority and to render an account of such business or affair. The term 'agent' as employed in such statutes imports a principal and implies employment, service and delegated authority to do something in the name and stead of the principal—an employment by virtue of which the money or property embezzled came into the agent's possession. The employment, however, need not be permanent. It may be temporary, occasional, general, or special."

Third, it is clear that the defendant received the funds in his fiduciary capacity. In Illinois, as in other jurisdictions, the relationship of principal and agent is a fiduciary one. (1 I.L.P., Agency, sec. 4.) One acts in a fiduciary capacity where special confidence is reposed in one who is bound in equity and good conscience to act in good faith with due regard to the interest of the person reposing the confidence. *Wharton* v. *Meyers,* 371 Ill. 546.

We conclude that the defendant was an "agent" of the complaining witness, receiving money in a "fiduciary capacity" and, therefore, within the purview of said embezzlement statute.

However, the present conviction must be set aside and

the cause remanded for a new trial, because of prejudicial error which intervened at the trial. This resulted for the most part from improper remarks of the trial court during defense counsel's closing argument.

For example, the court at one point interrupted to ask: "Would the defendant be discharged in bankruptcy if it were determined this money was embezzled?" There was thereby injected into the trial the question of what effect the jury's verdict would have upon the defendant's civil liability to the complaining witness, a matter which had no bearing upon the determination of guilt or innocence. And in the setting in which it was asked, the question appears to have been a subtle suggestion to the jury that if the defendant was found guilty of embezzlement his civil liability to the complaining witness would be preserved. The effect of this might well have been to excite sympathy for the complaining witness and prejudice against the defendant. For jurors are ever watchful of the attitude of the trial court, so that his lightest word or intimation is usually received with deference and may prove controlling. *People v. Marino,* 414 Ill. 445; *People v. Lurie,* 276 Ill. 630.

The court frequently interrupted defense counsel's argument, usually for the purpose of clarifying the issue of agency. Standing alone, this may not have been objectionable. But considered in context, we are convinced that the tenacity and frequency of the interruptions plus the somewhat extended comments made, served to impress upon the jury that the court believed the defendant guilty of the charge. (See *People v. Egan,* 331 Ill. 489, 493.) And when this is considered with reference to the bankruptcy question, we think it evident that the defendant was denied that type of trial to which he is entitled.

The judgment of conviction is reversed, and the cause is remanded to the circuit court of Winnebago County for a new trial.

*Reversed and remanded.*

Mr. Justice Schaefer, dissenting:

The indictment in this case contains four counts. Two of them charge that the defendant was the agent of Dorothy Tarrant, doing business as Cooper's Jewelry, and two of them charged that he was her servant. It is not contended in this court that the relation of master and servant existed between the complaining witness and the defendant. The critical question is whether the defendant was the agent of the complaining witness. Upon the record it seems to me that he was not. He maintained his own office, had his own employees, and collected accounts for approximately 500 other individuals and firms. He was subject to no control whatsoever by any of his customers in making his collections. His customers knew that he kept all of his collections in a single account. That the defendant was not an agent would be clear, I think, if vicarious liability was sought to be asserted against Dorothy Tarrant on account of the defendant's conduct in the course of his collection activities.

The conclusion of the majority that the defendant was an agent rests upon the assertion that "[t]he term 'agent' as used in embezzlement statutes is construed in its popular sense * * *." That generalization runs counter to the basic rule that criminal statutes are strictly construed.

More important than generalized statements as to the proper approach to the problem of construction, however, is the language to be construed. The statute under which the defendant was indicted (Ill. Rev. Stat. 1953, chap. 38, par. 210,) refers to "any clerk, agent, servant, solicitor, broker, apprentice or officer." If "agent" has the broad meaning which the majority gives it, each of the other terms is superfluous because all are embraced within the single term "agent." Many of the specific enumerations in the other statutes referred to by the majority likewise become largely, if not entirely, meaningless, for the particular relationships they seek to reach are also swallowed

up in the expanded definition of the term "agent."

It is arguable of course that the conduct of the defendant in this case should be regarded as criminal. The General Assembly might wish to make it so. But it might not. It might regard the collection agency as a desirable service enterprise which should not be made unduly perilous. If the defendant in this case, with his little agency, is guilty of one embezzlement, he is guilty of 500. The General Assembly might not want to make the enterprise so hazardous. It has not done so, in my opinion, by the statute before us.

MAXWELL and KLINGBIEL, JJ., concur in the foregoing dissenting opinion.