THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARRYL JOHNSON *et al.*, Defendants-Appellants.

First District (1st Division) Nos. 83—2410, 84—0545 cons.

Opinion filed December 8, 1986.

James J. Doherty, Public Defender, of Chicago (Jeffrey M. Howard and Frank P. Medea, Assistant Public Defenders, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Mark F. Smolens, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a trial before a dual jury, defendants Darryl Johnson and Reginald White were found guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)), and sentenced to terms of 35 years in the Illinois Department of Corrections. On appeal both defendants contend that the trial court erred in coercing two witnesses to testify by finding them in contempt of court for exercising their fifth amendment right. Defendant Johnson alone contends that: (1) he was denied a fair trial as a result of cumulative error, including the State's improper use of peremptory challenges to exclude racial minorities; (2) there was no probable cause to arrest him; (3) his arrest was in violation of the fourth amendment; and (4) he was interrogated without knowingly waiving his *Miranda* rights. Defendant White alone contends that: (1) the dual jury proceeding was improper; (2) the trial court erred in allowing the State to inform the jury that a State witness had been previously found guilty of the murder; and (3) the court erred in allowing a stenographic statement by defendant to go to the jury room. For the reasons that follow, we affirm.

The record sets forth the following facts pertinent to this appeal. On March 12, 1982, 17-year-old Cleave Herron was fatally shot at 19th Street and Kedzie, Chicago. On April 5, 1982, Chicago police detective Daisy Walker became involved in investigating the murder. Detective Walker was told by Eugene Kimball that on March 12 he had a conversation with Reginald White, a leader of the Vice Lords. Kimball stated that White told him that he, Ramon West, and Darryl Johnson were going to "roll on"[1] Keith Brice, the leader of the Black Gangster Disciples. Kimball told Detective Walker that he refused to go because he had no gun.

Kimball also related a conversation he overheard the next day. He stated that he heard Ramon West tell Reginald White that they had shot the wrong person. He heard White respond "that they would get Keith Brice later, and to keep it under his hat." Also present at this conversation was Darryl Johnson. Kimball advised Detective Walker that Reginald White and Ramon West could be found at Farragut High School.

Shortly thereafter, White and West were taken into custody and advised of their constitutional rights. Ramon West told police officers that Reginald White had a .22-caliber rifle at the time of the shooting and that he had obtained it from Darryl Cole. The police then located Cole, who told them that he had given the rifle to Darryl Johnson three or four days prior to the shooting. Cole also gave the police officers Darryl Johnson's address.

Detectives Walker and Godbold testified that they went to the address they had been given for Darryl Johnson and knocked at a downstairs door. They testified that a woman told them to come up the stairs to the second-floor apartment. The officers identified themselves to the woman, who was standing in the door to the apartment, and told her they wished to speak to Darryl Johnson. The woman stepped back and opened the door, allowing them into the apartment. The officers saw defendant Johnson lying on a sofa and asked him to accompany them to area four headquarters. Johnson left the apartment with the officers and was arrested and informed of his constitutional rights on the street outside the apartment.

Defendant Johnson filed motions to quash his arrest and suppress the statements that resulted from the arrest. At the hearing on the motions, the parties stipulated that if defendant's aunt, Mary Mack, was called as a witness, she would testify that she did not invite the

---

[1] In his statement to Assistant State's Attorney Michael Levitin, Darryl Johnson said that "roll on" meant kill.

police officers into Johnson's apartment. Defendant Johnson testified that he was not advised of his right to counsel and his privilege against self-incrimination before he agreed to talk to Assistant State's Attorney Michael Levitin and Detective Johnson. Both motions were denied.

Prior to trial, both defendants moved for separate trials. The trial court granted the motion for severance but ruled that the trial would be conducted as a "dual jury" proceeding, with a separate jury for each defendant. Each jury heard the evidence in the same courtroom simultaneously except when matters pertaining to only one defendant were introduced. Both defendants were found guilty by their respective juries, and they now bring this appeal.

Defendants Johnson and White both contend that the trial court improperly coerced Ramon West and Darryl Cole into testifying by holding them in contempt of court for exercising their fifth amendment privileges against self-incrimination. They further contend that the State compounded the error by vouching for the credibility of West and Cole.

■ The fifth amendment privilege, invoked here by defendants, is a personal privilege against self-incrimination. The Supreme Court has held that "[t]he Constitution explicitly prohibits compelling an accused to bear witness 'against himself'; it necessarily does not proscribe incriminating statements elicited from another." (*Couch v. United States* (1973), 409 U.S. 322, 328, 34 L. Ed. 2d 548, 554, 93 S. Ct. 611, 616.) Criminal defendants "cannot invoke the privilege of witnesses, codefendants or even co-conspirators. Nor can [they] successfully claim that their privilege was violated." McCormick, Evidence, sec. 120, at 289 (3d ed. 1984).

■ In the instant case, the State called both Ramon West and Darryl Cole as witnesses. Attorneys for both West and Cole advised them to invoke their fifth amendment right against self-incrimination. When they did so, they were held in contempt of court. After receiving, respectively, seven and five contempt citations, they both agreed to testify. Had they persisted in refusing to testify and appealed a final order of contempt to this court, a reviewable issue would have arisen. (See *People v. Thornton* (1983), 120 Ill. App. 3d 983, 987, 458 N.E.2d 1150.) The fact that the contemnors here failed to persist in asserting their fifth amendment rights does not, however, allow the defendants to raise the issue in their appeal. *People v. Godsey* (1978), 74 Ill. 2d 64, 73, 383 N.E.2d 988.

■ We also reject defendants' contention that the State compounded the error by vouching for the credibility of Ramon West and

Darryl Cole. In response to defense counsel's statement that West and Cole were State's witnesses, the prosecutor stated in his closing rebuttal, "Sure. And I vouch for their credibility." This alleged error is deemed waived as defendants failed to raise the issue in their post-trial motions. We note, however, that in the context of the entire argument, the comment, even if improper, did not constitute reversible error in light of the overwhelming evidence of defendants' guilt. *People v. Barnes* (1983), 117 Ill. App. 3d 965, 978, 453 N.E.2d 1371, *appeal denied* (1985), 102 Ill. 2d 555.

■ We next consider whether the prosecutor's comment in closing rebuttal that defendant had requested a lawyer penalized defendant Johnson for exercising his sixth amendment right to counsel. Defendant argues that the prosecutor's remarks constitute plain error (87 Ill. 2d R. 615(a)) and necessitate a new trial despite defense counsel's failure to object at trial. He relies principally upon *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 405 N.E.2d 1306, *appeal denied* (1980), 79 Ill. 2d 616. The prosecutor in *Meredith* stated in closing argument that "he [defendant] knew he had shot those people that is why he went to call his lawyer." We found this comment on defendant's exercise of his sixth amendment rights impermissible because it penalized the defendant for asserting a constitutionally protected privilege. *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 1073, 405 N.E.2d 1306, *appeal denied* (1980), 79 Ill. 2d 616, citing *Griffin v. California* (1972), 380 U.S. 609, 614, 14 L. Ed. 2d 106, 109-10, 85 S. Ct. 1229, 1232-33.

The comments which defendant now objects to, unlike those in *Meredith*, resulted from the introduction into evidence by the defendant of a court-reported statement in which the defendant requested an attorney. Following his introduction of the statement, defense counsel argued in his summation:

"[Y]ou'll see clearly by reading this [the court-reported statement] that Darryl finally realized that the State is coming down on him, and he's informed that he has a right to a lawyer. He exercises that right, and the questioning continues after he says he wants a lawyer."

In this context, we believe the prosecutor's comment was invited by defense counsel, and defendant cannot now object to the response. *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.

■ We next consider defendant Johnson's contention that the trial court erred in refusing to give his non-Illinois Pattern Jury Instruction. The instruction tendered by defense counsel stated: "Mere

presence at the scene of a crime or negative acquiescence in a crime is not sufficient to prove a person accountable for the crime." Although slight evidence will justify an instruction on a given defense (*People v. Bratcher* (1976), 63 Ill. 2d 534, 540-41, 349 N.E.2d 31), it is not error for the trial court to refuse an instruction where, as here, the evidence does not support the defense (*People v. Mancl* (1977), 55 Ill. App. 3d 41, 45, 370 N.E.2d 664).

The record shows that defendant Johnson admitted going to look for Keith Brice; admitted carrying a shotgun for six blocks through alleys and gangways in search of Keith Brice; admitted carrying the shotgun "for protection"; and admitted seeing Ramon West fire his shotgun and hearing a second shot fired. These facts sufficiently negate the argument that defendant was "merely present" or "negatively acquiesced" in the murder of Cleave Herron.

Furthermore, the jury here was adequately instructed on the parties' respective theories of the case, including the law relating to accountability. Accordingly, it was not error for the court to refuse to give a "mere presence" instruction. See *People v. Craig* (1979), 79 Ill. App. 3d 584, 589, 399 N.E.2d 168, *appeal denied* (1980), 79 Ill. 2d 632.

Defendant Johnson also contends that the trial court erred by improperly limiting defense counsel's cross-examination of prosecution witness Darryl Cole. On direct examination, Cole positively identified the .22 rifle and identified Darryl Johnson as the person to whom he had given the rifle in March 1982. On cross-examination, defense counsel sought to impeach his credibility by inquiring about his pending capital charge. The trial court foreclosed this line of questioning for the reason that the State had made no promises of leniency to Cole to induce his testimony.

■ While defense counsel should generally be allowed a wide latitude in cross-examination for the purpose of showing bias or motive to testify falsely (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 156, 429 N.E.2d 526), the extent of such cross-examination is within the sound discretion of the trial court, and reversal is warranted only where there has been an abuse of discretion that resulted in manifest prejudice to defendant. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 831, 447 N.E.2d 1029, *appeal denied* (1983), 96 Ill. 2d 549.) Where there was no offer of proof demonstrating that the evidence excluded had a positive and direct bearing on the issue of bias or motive to testify falsely, and where there was no promise of leniency in exchange for the witnesses' testimony against defendant, it was not error for the trial court to foreclose this line of inquiry. See *People v. Norwood*

(1973), 54 Ill. 2d 253, 257, 296 N.E.2d 852.

In informing the panel of potential jurors about the case, the judge stated that the defendant was charged with murder but that there would not be a death penalty involved. Defendant moved for a mistrial; however, that motion was denied. Defendant Johnson now contends that he was prejudiced by the remark because it increased the likelihood that the jury would convict him. We reject this argument as we believe from our examination of the record that such information was neither prejudicial to defendant nor was it a material factor in his conviction.

*People v. Riggins* (1956), 8 Ill. 2d 78, 132 N.E.2d 519, cited by defendant, is inapplicable. In that case, the trial court asked defense counsel during closing argument whether the defendant would be discharged in bankruptcy if he were acquitted of embezzlement. The Illinois Supreme Court reversed the conviction on the belief that the interjection of the irrelevant factor of defendant's civil liability prejudiced the defendant by creating sympathy for the complainant. 8 Ill. 2d 78, 85, 132 N.E.2d 519.

■ The single remark made here was merely a clarification of the situation for the jurors, and nothing was said regarding the effect of a guilty verdict in terms of the punishment that might be imposed. (See *People v. Washington* (1984), 121 Ill. App. 3d 479, 488-89, 459 N.E.2d 1029, *appeal denied* (1984), 99 Ill. 2d 534.) The remark was not made during closing argument as in *Riggins*, nor has it been shown that it had any impact on the jurors' determination as to whether the defendant was guilty or innocent. Where there is sufficient, competent evidence establishing defendant's guilt beyond a reasonable doubt and defendant cannot show that the error was the basis of the jury's verdict, the error is harmless and reversal is not required. *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 505, 448 N.E.2d 620, *appeal denied sub nom. People v. La Magna* (1983), 96 Ill. 2d 546.

■ We next consider whether the State's use of peremptory challenges to exclude minorities from the jury violated defendant Johnson's right to an impartial jury and to equal protection of the law. In support of this contention, he cites *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. The court in *Batson* held that if a defendant shows that facts or circumstances in his case raise an inference that the prosecutor used his peremptory challenges to exclude members of his race from the jury because of their race, a constitutional issue is raised; that defendant has the burden of raising the inference of purposeful discrimination; and once he has done so,

the burden shifts to the State to come forward with a neutral explanation for challenging such jurors. (476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) The State argues that defendant's contentions are not supported by the record and that *Batson* is inapplicable because it applies only prospectively under the standards discussed in *Stovall v. Denno* (1967), 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203-04, 87 S. Ct. 1967, 1970.

The question of whether *Batson* should be applied retroactively or only prospectively to juries impaneled after *Batson* was decided was recently considered by this court in *People v. Johnson* (1986), 148 Ill. App. 3d 163. The court in *Johnson* held that *Batson* should be applied retroactively to cases pending on direct appeal at the time *Batson* was decided because *Batson* does not establish new substantive rights but is an attempt to protect already existing constitutional rights more adequately. (148 Ill. App. 3d 163, 175.) *Batson* was also applied retroactively *sub silentio* to a case on direct appeal in *People v. Peters* (1986), 144 Ill. App. 3d 310, 494 N.E.2d 853.

Defendant argues that under *Batson*, he established a *prima facie* case of discrimination by showing that he was a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the venire minority members who were demographically similar to those eventually chosen to serve on the jury except for their minority status. He argues that he is entitled to rely upon the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." (*Batson v. Kentucky* (1986), 476 U.S. 79, ___, 90 L. Ed. 2d 69, 87, 106 S. Ct. 1712, 1723, quoting *Avery v. Georgia* (1953), 345 U.S. 559, 562, 97 L. Ed. 1244, 1247-78, 73 S. Ct. 891, 892-93.) Finally, he argues that from the pattern of strikes against minorities in this venire, he has raised the inference that the prosecutor used this practice to exclude the veniremen from the petit jury on account of their minority status.

Although we are of the opinion that *Batson* should be applied retroactively to cases on direct appeal, reversal is not warranted here as defendant has failed to make a *prima facie* showing of purposeful discrimination against black jurors. In order to do so in the instant case, defendant would have to show that blacks were being excluded from the jury for no apparent reason other than race. Defendant fails to meet his burden because the racial makeup of the prospective jurors excused by use of the peremptory challenges is not established in the record.

The record indicates that during jury selection, the State peremp-

torily challenged eight prospective jurors and one alternate juror. The only indication of the race of any of the prospective jurors came from defense counsel's remarks after *voir dire*, at which point he moved for a mistrial based on the State's selective exclusion of minorities. (Counsel stated that two blacks, a latino, a Hawaiian, and a Vietnamese were excused peremptorily by the State.) The motion was denied.

We note that other than counsel's statement, the record indicates neither the race of the prospective jurors excused by peremptory challenge nor does it show the racial identities of the seated jurors. Absent an adequate record, this issue must be considered waived. *People v. Gaines* (1981), 88 Ill. 2d 342, 358-59, 430 N.E.2d 1046, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.

We also reject defendant's argument that he was denied his right to an impartial jury drawn from a fair cross-section of the community by the State's use of peremptory challenges. The United States and Illinois Supreme Courts have consistently declined to extend the fair-cross-section requirement of the sixth amendment to petit juries. *Lockhart v. McCree* (1986), 476 U.S. 169, 90 L. Ed. 2d 137, 106 S. Ct. 1758; *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Gaines* (1984), 105 Ill. 2d 79, 88, 473 N.E.2d 868, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666; *People v. Payne* (1983), 99 Ill. 2d 135, 138, 457 N.E.2d 1202, *cert. denied* (1984), 469 U.S. 1028, 83 L. Ed. 2d 372, 105 S. Ct. 447; *People v. Williams* (1983), 97 Ill. 2d 252, 278, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.

■ ■ Defendant Johnson next contends that his arrest was effected without probable cause and that police violated his fourth amendment rights when they entered his residence without a warrant and arrested him. We do not agree.

An arrest may be made in the absence of a warrant where the arresting officer has reasonable grounds to believe that the person has committed an offense. (Ill. Rev. Stat. 1983, ch. 38, par. 107—2(1)(c).) "Reasonable grounds" has the same substantive meaning as "probable cause." (*People v. Wright* (1974), 56 Ill. 2d 523, 528-29, 309 N.E.2d 537, quoting *Brinegar v. United States* (1949), 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310-11). Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe that the person arrested has committed the offense. *People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92.

Defendant Johnson concedes that Detective Walker had a valid be-

lief that an offense had been committed, but argues that Walker did not have probable cause to believe that he committed the offense. He is apparently relying on the act that there was some initial confusion as to whether Darryl Cole and Darryl Johnson were the same person.

 The existence of probable cause does not depend upon the application of technical legal rules, however, but upon the totality of the circumstances and facts known to the officers at the time the arrest was made. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.) Here one of the informants relied upon by Detectives Walker and Johnson was a member of the same gang as defendant Johnson and had been included in the original plan to seek out and shoot Keith Brice. The other informant testified that he had supplied Darryl Johnson with a rifle three to four days prior to the shooting. We believe that once the officers, acting on information received from Cole and Kimball, went to the address they had been given by Darryl Cole and were told that Darryl Johnson was inside the residence, the requisite common-sense test was satisfied. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236-37, 469 N.E.2d 147; *People v. Robinson* (1976), 62 Ill. 2d 273, 277, 342 N.E.2d 356.) Because the trial court's ruling on a motion to suppress will not be disturbed on review unless it is manifestly erroneous (*People v. Stewart* (1984), 105 Ill. 2d 22, 41, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed 2d 283, 105 S. Ct. 2666), and because we believe the trial court applied the appropriate standards in finding that there was probable cause to arrest, we reject this contention of error. See *People v. Johnson* (1983), 94 Ill. 2d 148, 153, 445 N.E.2d 777.

 ██ Defendant Johnson next argues that even if the police had probable cause to arrest him, their warrantless, nonconsensual entry into his home violated his fourth amendment rights. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) He alleges that the requirements of *Payton* were not met because the State failed to prove either that: (1) the police were given consent to enter the residence, (2) the arrest did not take place inside the residence, or (3) exigent circumstances existed. Since it appears from the record that the necessary consent was given, we conclude that defendant's arrest met the requirements of *Payton*.

Detectives Walker and Godbold testified that after talking with Darryl Cole, they went to the address they had been given for Darryl Johnson. They knocked on a downstairs door and were invited upstairs by an adult female voice. The officers identified themselves and asked to speak with Darryl Johnson. The female, defendant's aunt, Mary Mack, stepped back and opened the door, allowing them to en-

ter. The officers saw defendant Johnson lying on a sofa and asked him to accompany them to headquarters. He agreed. He was then arrested and advised of his *Miranda* rights on the street outside his home. On these facts, the trial court found that the consent to enter was voluntarily given by an adult member of the household.

Defendant characterizes his aunt's conduct in admitting the police officers as acquiescence to authority rather than voluntary consent. He asserts that for the State to show that the consent was voluntary, it must show more than mere acquiescence to authority. (*Bumper v. North Carolina* (1968), 391 U.S. 543, 548-49, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1791-92.) He relies on this court's ruling in *People v. Johnson* (1981), 99 Ill. App. 3d 863, 865-66, 425 N.E.2d 1215, in which we found that there was no voluntary consent to enter where the defendant's grandmother opened the door when told by police that they were there to arrest her grandson. In *Johnson*, however, the facts were decided by stipulation and there was no indication that the police asked for permission to enter.

The test for valid consent is voluntariness under the totality of the circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2058-59.) Here the officers knocked on the door and were invited upstairs. They asked to talk with Darryl Johnson and his aunt opened the door. The conduct of the officers was peaceful and their inquiry was reasonable under the circumstances. Nothing indicates that defendant's aunt was induced to act against her will 'or that she did so. (See *People v. Lane* (1982), 106 Ill. App. 3d 793, 800, 436 N.E.2d 704.) We concur with the finding of the trial court that the officers were given consent to enter Johnson's home and thus his arrest without a warrant met with constitutional requirements.

■■ Defendant Johnson's final argument on appeal is that the trial court erred by refusing to suppress his pretrial statements. He argues that since the State failed to show that he had been adequately informed of his right to counsel and his privilege against self-incrimination, his statements were *per se* inadmissible under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

By failing to raise this issue in his written motion for a new trial, defendant has waived appellate review. (Ill. Rev. Stat. 1985, ch. 38, par. 116—1; *People v. Irwin* (1965), 32 Ill. 2d 441, 443-44, 207 N.E.2d 76.) We will, however, consider this issue under Supreme Court Rule 615(a), as one affecting substantial rights. 87 Ill. 2d R. 615(a); *People v. Visnack* (1985), 135 Ill. App. 3d 113, 118, 481 N.E.2d 744.

An individual subject to custodial interrogation regarding matters

that might tend to incriminate him is entitled to the procedural safeguards set out in *Miranda v. Arizona* (1966), 384 U.S. 436, 479, 16 L. Ed. 2d 694, 726-27, 86 S. Ct. 1602, 1630; however, *Miranda* does not require that specific language be used to advise a defendant of his rights. What is required is an intelligent conveyance of the right to remain silent and the right to assistance of counsel during interrogation. (*People v. Merrero* (1984), 121 Ill. App. 3d 716, 722, 459 N.E.2d 1158; *People v. Prim* (1972), 53 Ill. 2d 62, 67, 289 N.E.2d 619.) When an individual has been advised of his rights and indicates that he understands them, his giving of a statement without requesting a lawyer is evidence that he has chosen to waive a known right. *People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334.

Defendant Johnson relies on *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 771, 336 N.E.2d 50, which held that a confession was properly suppressed where the State failed to meet its burden of showing that the defendant voluntarily waived his *Miranda* rights. The defendant in *Ruegger* had been given *Miranda* warnings at the scene of his arrest after which he signed a form stating that he understood his right to counsel and right against self-incrimination and did not wish to answer any questions. Later that day he was taken to the office of his uncle, a captain in the local police department. He was given a second form explaining his rights and again stated that he did not want to answer any questions until he talked to his attorney. Shortly thereafter, he decided to talk to his uncle and a detective and made a tape-recorded confession. Testimony at the hearing on the motion to suppress indicated that although no express promises of leniency were made, various inducements may have been offered to encourage him to confess.

In the present case, there were no such inducements and no indication that the statement was not voluntarily made. Detective Godbold testified that after defendant Johnson was arrested, *Miranda* warnings were read to him from a preprinted card. Defendant said that he understood and did not indicate that he wanted to speak with an attorney. He was then taken to area 4 headquarters where he was again advised of his rights and again did not ask for an attorney. At this time, he made a statement to Detective Godbold and his partner, detailing the events that occurred the night of Cleave Herron's death but denying that he fired his gun.

About 45 minutes later, Assistant State's Attorney Michael Levitin and Detective Cornelius Johnson met with defendant Johnson. Mr. Levitin gave defendant the *Miranda* warnings by memory and af-

ter each warning asked the defendant if he understood. Defendant responded that he did. Defendant then talked with Levitin and Detective Johnson for about half an hour, essentially repeating the prior statement made to Detective Godbold. We find that the trial court did not err in failing to suppress defendant's pretrial statements where the record shows that he was adequately informed of his constitutional rights and that he waived them voluntarily.

■■■ Defendant White maintains that the dual jury proceeding was prejudicial here as both juries heard antagonistic cross-examinations of a State witness by opposing defense counsels. The State argues that use of the dual jury was proper as a means of avoiding the severance problem and that the record here shows no prejudice to defendant White.

As a general rule, when two parties are charged with offenses arising out of a common occurrence, one of the accused does not have an absolute right to be tried separately. (*People v. Ruiz* (1982), 94 Ill. 2d 245, 257, 447 N.E.2d 148, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465.) A defendant who believes that he will be prejudiced by being tried with a codefendant may request severance pursuant to statute (Ill. Rev. Stat. 1985, ch. 38, par. 114—8), but he must demonstrate with some specificity how he will be prejudiced by a joint trial; merely stating that he believes he will be prejudiced is insufficient (*People v. Lee* (1981), 87 Ill. 2d 182, 186, 429 N.E.2d 461).

■■■ In determining whether to grant a severance, the primary question for the trial court is whether the defenses of the defendants are so antagonistic that a joint trial would be unfair to one or both of them. (*People v. Ruiz* (1982), 94 Ill. 2d 245, 257, 447 N.E.2d 148, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465; *People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461.) Whether separate trials should be granted is a matter for the discretion of the trial court, and the decision of the trial court will not be reversed absent a showing of abuse. *People v. Gholston* (1984), 124 Ill. App. 3d 873, 888, 464 N.E.2d 1179, *appeal denied* (1984), 101 Ill. 2d 570.

In the case at bar, the trial court granted a severance. Because much of the evidence proffered by the State was admissible in both trials, however, or came from witnesses who testified at both trials, two juries heard the evidence simultaneously in the same courtroom. When evidence was presented that was admissible only against one defendant, the jury for the other defendant was removed.

■■■ This procedure has been found permissible provided the defendant is given every opportunity to present a complete defense to his own jury, there is no event which confused the jury or affected its

ability to render a fair decision, and the record shows that the jurors were adequately prepared for the procedure. (*People v. Church* (1981), 102 Ill. App. 3d 155, 164-65, 429 N.E.2d 577.) Absent a showing of prejudice, a reviewing court will not speculate as to any impropriety in the procedure. *People v. Smith* (1981), 94 Ill. App. 3d 969, 976, 419 N.E.2d 404, *appeal denied* (1981), 85 Ill. 2d 573.

The record here shows that the trial court adequately prepared the jurors for this procedure. It also appears, and defendant White does not claim otherwise, that he was given every opportunity to present a full defense to his own jury. The question remains whether defendant White was prejudiced by the "antagonistic" cross-examination of Ramon West by opposing defense counsel. We believe that he was not.

Defendant White relies on *People v. Daugherty* (1984), 102 Ill. 2d 533, 544, 468 N.E.2d 969, in which the Illinois Supreme Court found that the defendant was prejudiced by a denial of severance where the defense of the codefendant was antagonistic. Defendants here, however, were not tried together. Although both juries knew, prior to the testimony of Ramon West, that each defendant claimed to be innocent and had implicated his codefendant, it was not a case in which the juries were confronted with each codefendant implicating the other and professing his own innocence. 102 Ill. 2d 533, 544, 468 N.E.2d 969.

The crux of the State's case was the interlocking statements of the defendants, demonstrating the involvement of both of them with regard to time, locality, felonious activity, and awareness of the overall plan or scheme. (See *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132.) The testimony of Ramon West served to corroborate these statements.

▪▪ Contrary to defendant White's assertion, the dual juries in this case were not exposed to a spectacle where the People frequently stood by and witnessed a combat in which the defendants tried to destroy each other. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 547, 468 N.E.2d 969.) Nor were the juries confronted with a contest in which each defendant attempted to discredit the witnesses of his codefendant. (See *People v. Braune* (1936), 363 Ill. 551, 555, 2 N.E.2d 839.) Cross-examination of West by both defendants was an attempt to impeach a State witness, not to discredit the witness of a defendant, which the court found prejudicial in *Braune*.

▪▪ Defendant White also fails to make it clear how these few questions on the cross-examination of a corroborative witness could so confuse the jury that they were unable to render a fair decision. (See

*People v. Smith* (1981), 94 Ill. App. 3d 969, 975, 419 N.E.2d 404, *appeal denied* (1981), 85 Ill. 2d 573.) Accordingly, we find that defendant White was not prejudiced by the cross-examination of Ramon West before the combined juries.

Defendant White also contends that the trial court erred by allowing the State to inform the jury that a State witness had previously been convicted in juvenile court of the murder of Cleave Herron. Because defendant failed to include this issue in a written motion for a new trial, it is waived for purposes of appeal. *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362.

 Defendant White's final contention is that the trial court erred in allowing a copy of his court-reported statement to go to the jury room. He asserts that since the statement was read to the jury verbatim during the trial, sending the statement to the jury room tended to overemphasize the statement and encourage the jury to give it unfair weight in their deliberations.

It is well established that "[w]hether evidentiary items should be taken to the jury room [rests] with the discretion of the trial court, whose decision will not be disturbed absent the showing of an abuse of discretion to the prejudice of the defendant." (*People v. Williams* (1983), 97 Ill. 2d 252, 292, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) Defendant here has made no such showing of prejudice.

Defendant relies on *People v. Carr* (1977), 53 Ill. App. 3d 492, 499-500, 368 N.E.2d 128, in which it was found that the trial court committed reversible error by allowing certain statements to go to the jury room. The statements objected to in *Carr* were prior inconsistent statements of two State witnesses which had not been admitted into evidence and which were sent to the jury without adequate instructions that they were not to be considered as substantive evidence. Thus *Carr* does not support defendant's argument.

For the reasons set forth above, the judgment of the circuit court is affirmed as to both defendants, Darryl Johnson and Reginald White.

As part of our judgment, we grant the State's request that defendants be assessed $75 as costs for this appeal.

Judgment affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.