THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GLENN McEWEN, Defendant-Appellant.

First District (5th Division)   No. 85—1495

Opinion filed June 12, 1987.—Rehearing denied July 21, 1987.

Steven Clark and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Peter D. Fischer, and Jane Miller, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by defendant Glenn McEwen from a conviction after a jury trial for the offenses of murder and armed robbery. Based on that conviction and jury disagreement on a death penalty recommendation, the trial court imposed a sentence of natural life imprisonment for the murder conviction and a concurrent term of 30 years for the armed robbery conviction.

The facts disclose that on November 19, 1983, at about 1:30 a.m., the victim, Theodore Everett, purchased a package of cigarettes at a gas station on 159th Street in Harvey, Illinois. Defendant, holding a gun under his jacket, approached Everett, pointed the gun at him and said, "Give me your money." Everett gave $50 to defendant, whereupon defendant fatally shot Everett in the back. There were no witnesses to the shooting. The case was tried with the State seeking the death penalty.

On appeal, defendant does not challenge the substantive issues of the crime; rather, he questions the procedures followed resulting in his conviction and the subsequent sentencing. In an original brief filed with this court in December 1985, defendant argues that he was denied a fair trial because of the exclusion for cause of prospective jurors from the guilt phase of the trial based on their expressed death penalty scruples. He also contends that he was deprived of a fair and

impartial jury by the trial court's questioning of all prospective jurors as to their views on the death penalty. Defendant additionally asserts in his initial brief that the Illinois sentencing scheme used by the court violates due process and proportionate penalty clauses of the Illinois Constitution.

In a supplemental brief filed in March 1986, defendant contends he was denied effective assistance of counsel because his trial attorneys allegedly implicitly conceded his guilt by advancing no theory of defense. Defendant additionally contends that the trial court erred in sentencing him to natural life imprisonment because there was no proof that the shooting was intentional. Defendant's final claim is that the State's peremptory challenges to exclude the first three black potential jurors requires a *Batson* hearing. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) It is not clear whether defendant, during oral argument before this court, abandoned some of his initial contentions. However, in this age of purifying the criminal process by judicially ensuring the fairness of procedures and legislating increasing penalties, this court believes that it must respond to all of defendant's arguments.

The record is clear that during *voir dire*, 21 prospective jurors were excused for cause because they expressed reservations as to the imposition of the death penalty. Defendant's counsel, counsel for the State's Attorney, and some appellate courts call these jurors "Witherspoon excludables." This nomenclature is a literary misnomer that ought to be corrected. The term "Witherspoon excludables" is derived from the case of *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, wherein the Supreme Court left the legal door ajar on the issue of whether the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the ultimate issue of guilt or innocence. The underlying basis for the case was Witherspoon's conviction for the murder of a police officer. To name prospective jurors who express a conscientious objection to the death penalty after a convicted police killer seems almost to be class slander. Since many people in our democratic society base an anti-death penalty belief on the Mosaic Fifth Commandment, it would probably be more literally correct to call such prospective jurors, "Fifth Commandment excludables."

Regardless of what appellation is given to such citizens, the United States Supreme Court, and our Illinois Supreme Court, have consistently rejected the argument that qualifying a juror in connection with his or her views on the death penalty creates a conviction-prone jury denying a defendant State and Federal constitutional

rights to a fair trial. (*Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758; *People v. Wright* (1985), 111 Ill. 2d 128, 490 N.E.2d 640.) Until a case arises that reveals that a defendant, in fact, was denied a fair trial by the exclusion of prospective jurors who have expressed a moral objection to the death penalty, or when an innocent defendant is convicted by such a jury, courts must follow the long-standing and oft-reviewed rule that such exclusion does not *ipso facto* deny a defendant a fair trial.

■ With respect to defendant's claim that the Illinois sentencing scheme is constitutionally infirm as it was applied to him, this court initially points out that it appears that defendant has waived this point on appeal by not raising the objection at the sentencing hearing or in a post-trial motion. (*People v. Collins* (1981), 97 Ill. App. 3d 465, 467, 422 N.E.2d 1061.) Even if no waiver occurred, we must reject such a claim. Defendant contends that the Illinois sentencing law regarding felony murder violates the due process (Ill. Const. 1970, art. I, sec. 2) and proportionate penalties (Ill. Const. 1970, art. I, sec. 11) clauses of the Illinois Constitution. This argument is based on the fact that the statutes relevant to this case precluded the trial court from imposing a sentence ranging from 40 years to life.

In this case, the jury convicted defendant of murder. Accordingly, it also determined that defendant committed the crime with the requisite mental state of intent or knowledge. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(6)(b).) It then became the trial court's duty to sentence him. The court found that the murder was not accompanied by brutal and heinous conduct. A life sentence is permitted by Illinois law for murder if the court finds that (1) the murder was accompanied by exceptional or heinous behavior, or (2) that one of the statutory aggravating factors is present. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b).) Felony murder is an aggravating factor. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6).) Thus, the law provides for a sentence of 20 to 40 years for murder and authorizes a sentence for natural life imprisonment if the murder is a felony murder. Since the jury had found the murder was committed with the required mental state of intent or knowledge, the trial court concluded, and properly so, that this was a felony murder permitting a sentence of natural life imprisonment for the crime.

Defendant claims that since there is no provision for an intermediate sentence between the range of 40 years and life imprisonment for a murder without a finding of brutal and heinous conduct, the statute violates his due process rights and is an illogical limitation on the trial court's discretion by not providing an incremental range of penalties

for such a murder. This court cannot conclude that merely because the legislature saw fit to treat heinous and brutal murders in the same manner as a felony murder in sentencing an offender, that arbitrariness and discrimination have occurred. A murder is a murder whether it is done heinously, brutally, or with the requisite intent. Moreover, an argument almost identical to defendant's argument was rejected by this court in *People v. Bowen* (1985), 133 Ill. App. 3d 994, 479 N.E.2d 997, a case similar in fact to the case at bar. The due process-proportionate rule applies to the disproportionality of sentences to the crimes committed. (133 Ill. App. 3d 994, 996, 479 N.E.2d 997.) There is no constitutional mandate that a sentencing structure must provide consecutive degrees, or increments, of punishment for specific crimes. All that is required is that penalties be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, sec. 11.) This section obviously precludes arbitrary or discriminatory sentencing. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) Accordingly, it is thus apparent that the Illinois sentencing procedure as applied to defendant does not offend his constitutional rights.

In the first part of the bifurcated sentencing hearing, the jury found that defendant was eligible for the death penalty; in the second phase of the hearing, the jury could not unanimously find that the court should sentence defendant to death. Despite these facts, defendant argues that his two assistant public defenders did not properly represent him. He predicates this argument on defense counsel's alleged failure to present any evidence indicating a theory of defense. As a result, appellate defense counsel now argue that such conduct at trial was inconsistent with defendant's plea of not guilty, and therefore, was inadequate representation.

Defendant admits that the trial defense never conceded his guilt as did counsel in the case he relies on, *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513. However, at the same time, defendant contends that by never arguing his innocence, but failing to introduce evidence to call into question the State's evidence, and by using cross-examination solely to develop a theory of the facts which highlighted defendant's guilt, but which may have been helpful in the death penalty hearing, counsel's defense was inadequate. Defendant apparently ignores the fact that a different defense approach may have resulted in the death penalty.

One of the most often used and most abused points on appeal in criminal cases is the charge of ineffective assistance of counsel. The

test of effective assistance of counsel is not evaluated by the ultimate finding of guilty or not guilty, nor is it determined by an appellate attorney's propounding a different theory of defense that may have produced a different result after an examination of the trial record (even if the alternative was the death penalty). The test to be applied was established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Under *Strickland*, a defendant claiming ineffective assistance of counsel must show (1) that advice of counsel fell outside the range of competence demanded of attorneys in criminal cases, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068; *People v. Guest* (1986), 115 Ill. 2d 72, 88-89, 503 N.E.2d 255.

Defendant has not satisfied this test in either respect. First, there is nothing in the record or defendant's briefs demonstrating that the trial attorneys' advice to defendant fell beyond the ambit of competence of attorneys in criminal cases. The record also fails to disclose any professional errors indicating that a better result would have been obtained but for defense counsel's conduct. Actually, the result could have been worse—it could have been fatal.

The facts adduced at trial show that the State had a strong case for felony murder and was seeking the death penalty. After being arrested for a completely unrelated crime, defendant told the arresting officer he had information regarding a murder. He related that a man named Elgin James "stole some fifty dollars off him and shot him and ran." Later, defendant admitted that he was the one who robbed and killed the victim. In a court-reported statement to an assistant State's Attorney, defendant admitted he shot the victim in the back after the robbery and that he had thrown away his weapon immediately prior to having been arrested in connection with another crime. The weapon was recovered after defendant showed the officer where it had been thrown. Defendant admitted shooting Everett and received three sets of *Miranda* warnings before his confession. He was never promised leniency in exchange for the confession. Seventeen witnesses were called by the State, eight of which were cross-examined by counsel for defendant. Defense counsel also presented important pretrial motions, gave an opening argument, made objections during the trial, and otherwise conducted a valid defense.

What testimony, physical or verbal, that defense counsel could have elicited to refute the State's case is not contained in defendant's argument. Accordingly, this court cannot conclude that defendant was

denied effective assistance of counsel.

In his supplemental brief, however, defendant argues that his confession indicates the gun with which he shot his robbery victim discharged accidently. Therefore, the State failed to prove that defendant intentionally shot Everett. He asserts that the State's failure to prove an intentional felony murder requires that his sentence be reduced to 40 years for murder, the maximum term of imprisonment for that crime. Defendant bases this conclusion on the following excerpt from his court-reported statement to Assistant State's Attorney Charles A. Boskey:

"Q. And then he [Everett] started to turn away from you?
A. Yes.
Q. So his back was toward you?
A. Yes.
Q. He was trying to get away from you?
A. Yes.
Q. Is that when you shot him?
A. That is when it went off."

However, in this same statement, defendant also admitted that he was pointing a loaded and cocked gun at Everett during the robbery, and further, that there was only approximately a distance of six inches between the two men.

■■ ■ The jury, not the trial court, found defendant committed the killing of Everett with the intent required by Illinois law to constitute felony murder. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1.) Defendant misconstrues the law relating to the type of knowledge necessary for an act to constitute felony murder, even if the court assumes the gun accidentally discharged as defendant contends.

Since prior to the fourth year of James the First, it has been the law that a party who, in the commission of a wrongful act, commits another wrong not meant by him, or where in the execution of an intent to do wrong, an unintended act resulting in a wrong ensued as a natural and probable sequence, the one acting with the wrongful intent is responsible for the unintended result. (*People v. Hickman* (1973), 9 Ill. App. 3d 39, 44, 291 N.E.2d 523.) Defendant's intent to rob Everett with a loaded and cocked gun indicates sufficient wrongful intent to support the charge of felony murder, even if, as defendant now contends, the gun went off accidently. Recently, the United States Supreme Court held that a defendant who participates in a felony but does not intend to kill or commit the specific act leading to that result may constitutionally be sentenced to death as long as his participation in the felony was major and his mental state was one of

reckless indifference to the value of human life. (*Tison v. Arizona* (1987), 481 U.S. ___, 95 L. Ed. 2d 127, 107 S. Ct. 1676.) Based on this standard, the jury could have imposed the death penalty had the gun accidentally discharged during the felony as described by defendant.

In Illinois, a party acts with sufficient knowledge in a murder case if (1) he knows with practical certainty that his conduct will cause death, or (2) he knows his conduct creates a strong probability of death or great bodily harm. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1.) To summarize, a killing constitutes felony murder where it is shown that an actor intentionally brought about the death of another or that the actor had knowledge that his conduct was practically certain to cause death or created a strong possibility that death would result. (*People v. Guest* (1986), 115 Ill. 2d 72, 503 N.E.2d 255.) Thus, it is apparent that defendant's shooting of Everett during the commission of an armed robbery was felony murder even if the gun went off accidentally.

■ In none of the cases cited by defendant in support of his proposition was the defendant engaged in a robbery or other felony at the time of the killing. In *People v. Calhoun* (1972), 4 Ill. App. 3d 683, 281 N.E.2d 363, the defendant was engaged in a verbal altercation with the victim before the shooting. In *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389, defendant shot his daughter at a drinking party, while he was under the influence of alcohol and transferring his gun to a trunk when it discharged. In *People v. Bauman* (1975), 34 Ill. App. 3d 582, 340 N.E.2d 178, defendant drew and pointed a revolver while in fear of a physical attack by his intoxicated violent brother. We cannot apply the reasoning of these cases to the case at bar wherein defendant was committing an armed robbery at the time of the murder. Therefore, we find that defendant's contention that the fatal, and allegedly accidental, shooting of Everett during the robbery does not show the requisite intent to be without merit.

■ However, defendant's last contention requires a remand for a *Batson* hearing. It appears that three black venire persons were excluded by the State. Defense counsel had moved for a mistrial, after the State had exercised three peremptory challenges to exclude the first three potential black jurors. The trial court denied the motion. At the time, the trial court was correct. However, in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the Supreme Court, for the first time since the Civil War, held that persons could not be excluded from a criminal jury by use of a peremptory

challenge solely because of race. The court later held that the *Batson* rule should be applied retroactively to all cases pending on direct appeal or not yet final. *Griffith v. Kentucky* (1987), 479 U.S. ___, 93 L. Ed. 2d 649, 107 S. Ct. 708.

The State contends that since defendant has not made a *prima facie* showing that the prosecution exercised its peremptory challenges in order to systematically exclude blacks from the jury, there is no reason to remand this cause for a *Batson* hearing. Under *Batson*, a *prima facie* case is established by showing that defendant is a member of a cognizable racial group, that the prosecution has exercised peremptory challenges to remove members of defendant's race from the venire, and that these facts and any other relevant circumstances raise an inference that such challenges were based on race. (*Batson v. Kentucky* (1986), 476 U.S. 79, 96-97, 90 L. Ed. 2d 69, 87-88, 106 S. Ct. 1712, 1722-23.) We believe that such an inference is raised by the known facts in the present case.

This case is distinguishable from *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 502 N.E.2d 304, relied on by the State. In *Johnson*, the court refused to remand for a *Batson* hearing because the defendant had not made a *prima facie* showing of discrimination; the record revealed the racial identities neither of the excluded venire persons nor of the jury. That is not exactly the case here. As indicated by defense counsel's motion for a mistrial on the basis of the State's peremptory challenges, the record shows that at least three of those challenges were used to exclude potential jurors who were of defendant's race. Moreover, in response to the defense motion, the State responded, "You excluded two women," whereupon the defense explained its reasons for so doing. Defense counsel then asked the State to explain its reasons for the three challenges, to which it answered that under the law, it did not have to give any reasons. This court believes that this adequately establishes a *prima facie* case of racially motivated peremptory challenges. We also note that this trial record was made at a time when the law did not require such facts to be preserved for the record.

Rather than follow the opinion expressed in *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1085, 502 N.E.2d 304, that absent an adequate record, this issue must be considered waived, we prefer to follow the direction of our supreme court recently set forth in seven supervisory orders wherein causes were remanded to the trial court for the limited purpose of a *Batson* hearing. (May 1, 1987, S. Ct. Nos. 55660; 58037; 60190; 60705; 60857; 63204 and 63240, cons.; 55370.) These orders interpreting *Batson* and *Griffith* require that this other-

wise well-tried case be remanded for a hearing with the following instruction: If the trial court decides that the facts establish a *prima facie* showing of purposeful discrimination of jurors on account of race, and the prosecutor does not come forward with a neutral explanation, defendant's conviction must be reversed and a new trial ordered.

Affirmed and remanded with directions.

SULLIVAN, P.J., and LORENZ, J., concur.